JACOB F. OCHSENBEIN, Respondent, *v.* MARTIN W. SHAPLEY et al., Appellants.

Defendants, who were boiler makers, placed a new boiler manufactured by them in a public street, in front of their manufactory, and directed C., their superintendent, to test it. A customer requested that it should be tested under a pressure of one hundred and eighty pounds. S., one of the defendants, replied that one hundred and fifty pounds was enough. C. and the customer started for the street, and, upon the latter again

expressing a wish for a test to one hundred and eighty pounds, C. replied that he would test it "to two hundred, any how." The tests began with the safety-valve loaded to a pressure of one hundred and ninety-eight pounds ; when the steam began to escape, C. took hold of and held down the lever, when the boiler exploded and plaintiff was injured. In an action to recover damages, *held,* that the act of C. was reckless and foolhardy, and as he was acting in defendants' business, although in making the test he went beyond their expressed wishes, they were chargeable; and that a refusal to submit the question to the jury was proper.

Plaintiff, who was passing in the street as the test was being applied, stopped near the boiler ; he was told that it was not a safe place to be in, and was requested to leave, but did not heed the warning. *Held,* that the facts tended to show contributory negligence on his part; and that a charge of the court that there was no sufficient evidence of contributory negligence to defeat a recovery, and a refusal to submit that question to a jury was error.

(Argued March 23, 1881 ; decided April 26, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made November 26, 1879, affirming an order of Special Term, which denied a motion for a new trial, made on a case and exceptions, after verdict for plaintiff.

This action was brought to recover damages for injuries occasioned by the explosion of a boiler which was being tested in a street, in front of defendants' boiler manufactory, which explosion was alleged to have been caused by the negligence of defendants' servant.

The material facts are stated in the opinion.

*O. W. Chapman* for appellants. Defendants' servant having gone beyond the scope of his authority in testing the boiler they were not liable for his acts. (*Cavanah* v. *Dinsmore*, 12 Hun, 465 ; *Quinn* v. *Power*, 17 id. 102, 105 ; *Stone* v. *Hills*, 45 Conn. 44 ; *Story* v. *Ashton*, L. R., 4 Q. B. 476 ; *Rounds* v. *R. R. Co.*, 64 N. Y. 129, 136 ; *Mott* v. *Ice Co.*, 73 id. 543.) When the defense is that the wrongful act was not within the general scope of the servant's employment, and so not within the express or implied authorization of the master, it is for the court to pass upon the competency of the evidence and for the jury to give effect to it. (*Mott* v. *Consumers Ice Co.*, 73 N.

Y. 543, 550; *Rounds* v. *D. L. & W. R. Co.*, 64 id. 129; *Isaacs* v. *Third Ave. R. Co.*, 47 id. 127.) The explosion was caused by the intervention of the servant's will, stepping in to accomplish an individual purpose foreign to, and after he had knowingly passed the limits of, his authority, and defendants were not liable. (Whart. on Neg., §§ 134–139–148; Week's Dam. Absq. Inj., § 131; 35 N. Y. 213; *Fitzsimmons* v. *Inglis*, 5 Taunt. 535; *Ins. Co.* v. *Tweed*, 7 Wall. 52; *Shepherd* v. *Chelsea*, 4 Allen, 113; *Fitzsimmons* v. *Inglis*, 5 Taunt. 534.) If defendants did not expressly or impliedly authorize Carter's acts after he knowingly passed one hundred and ninety-eight pounds, then they are no more responsible for what he thereafter did than if he had been a stranger. (*Stone* v. *Hills*, 45 Conn. 44; *Cavanah* v. *Dinsmore*, 12 Hun, 465; *Quinn* v. *Power*, 17 id. 102, 105; *Story* v. *Ashton*, L. R., 4 Q. B. 476; *Vanderbilt* v. *R. T. Co.*, 2 N. Y. 479; *Wright* v. *Wilcox*, 19 Wend. 343.) Whether in a given case the servant's acts are such as to be imputable to the master is at least a question for the jury. (*Harrison* v. *Collins*, 86 Penn. St. 153; *Fraser* v. *Freeman*, 45 N. Y. 566.) It was at least a question for the jury whether the acts of Carter and the explosion would probably flow from defendant's tort, or if it would naturally or might reasonably be expected to flow from it. (*Fraser* v. *Freeman*, 45 N. Y. 566; *Webb* v. *R. W. & O. R. R. Co.*, 49 id. 421, 431; *Saxton* v. *Bacon*, 31 Vt. 540.) Co-tort-feasors are only jointly responsible so long as all are acting with a common purpose. (*Fraser* v. *Freeman*, 45 N. Y. 566, 571.) It should have been left to the jury to say whether the plaintiff was not a mere lounger and not using the street for the purposes of travel, and hence the testing of the boiler was not a nuisance as to him. (*Norristown* v. *Moyer*, 67 Penn. St. 355.) The question of contributory negligence should have been left to the jury. (Whart. on Neg., § 300; *Warner* v. *D. L. & W. R. Co.*, 80 N. Y. 217.)

*T. F. McDonald* for respondent. The question of contributory negligence was properly taken from the jury, as the

facts do not establish any other fault of the plaintiff than that of acting upon the presumption that the defendants' foreman would act in accordance with his duties and plaintiff's rights. (*Newton* v. *The N. Y. C. R. R. Co.*, 29 N. Y. 390, 383; *Jetter* v. *The N. Y. & H. R. R. Co.*, 2 Keyes, 154; *Ernst* v. *Hudson R. R. R. Co.*, 35 N. Y. 9, 24, 35; Shearman & Redf. on Negligence, 29, 30, 32; *Daily* v. *N. & W. R. R Co.*, 26 Conn. 593, 597.) The plaintiff owed to the defendants no duty to provide against the negligence of their foreman. (*R. R. Co.* v. *Jones*, 95 U. S. S. C. [5 Otto], 439; *F. R. R. Co.* v. *Munger*, 5 Den. 255, 267; *S. C.* affirmed, 4 Com. 349; 34 N. Y. 11; *Carrall* v. *N. Y. & H. R. R. Co.*, 1 Duer, 571; *Ingalls* v. *Bills*, 9 Metc. 1; *Loomis* v. *Terry*, 17 Wend. 496; *Stokes* v. *Saltonstall*, 13 Pet. 181; 27 Barb. 228; Shearman & Redf. on Neg. 9, § 11; 1 Bosw. 321, 357; 34 N. Y. 9; 76 id. 125.) The law presumes every one uses ordinary care. Hence, no proof was necessary to establish plaintiff's ordinary care in self-protection. (Shearman & Redf. on Neg. 30, 44, 47; *Button* v. *T. H. R. R. Co.*, 18 N. Y. 248.) The refusal to submit the question to the jury whether the explosion was not caused by the foreman's fraudulent act was not error. (*Gardner* v. *Hewitt*, 3 Denio, 236; 92 Ill. 139, 141; *Gildersleeve* v. *Landers*, 73 N. Y. 609, 610; *Paige* v. *Willett*, 38 id. 28; *Potter* v. *Smith*, 70 id. 299.) The foreman's purpose to test thoroughly was not a fraudulent purpose, notwithstanding mistakes or ill-judged or reckless acts, unless he had a purpose to explode the boiler. (*Higgins* v. *I. W. T. & R. R. Co.*, 46 N. Y. 23, 26; *Rounds* v. *D., L. & W. R. R. Co.*, 64 id. 129.) In this case the foreman had the right to test as he did, if he did it for the purpose of doing what he thought his duty to the defendants, and, therefore, the rule applies that "where a party had the legal right to do an act for one purpose and not for another, the law will presume he did it for the lawful purpose." (8 Wend. 175, 182; *Mallory* v. *The Travelers' Ins. Co.*, 47 N. Y. 54, 55.) In this case it was the duty of the defendants to see that the foreman acted cautiously, and they are not entitled to set up the disobedience of orders by their

foreman as a defense, even though the agent purposed the injury. (14 How. [U. S. S. C.] 295 ; 95 U. S. 291 ; 16 How. 469 ; Law of Nuisance [Wood], 541; *Thomas* v. *Winchester*, 2 Seld. 397 ; 6 L. & Eq. 562 ; *Smith* v. *N. Y. & H. R. Co.*, 19 N. Y. 130 ; 10 Weekly Dig. 169.) As the obstruction and the use were not incident to the enjoyment of the street, the law determined the unlawfulness of the obstruction and of the testing in that place. Either was unlawful and a nuisance *per se*. (63 Barb. 111; 1 Den. 524; 3 Compt. 230.) The comparative culpability of two will not affect the liability of either where the injury is consequential. (*Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y. 628 ; *Webster* v. *H. R. R. R. Co.*, 38 id. 260 ; *Sheridan* v. *B. & N. R. R. Co.*, 36 id. 39 ; *Chapman* v. *N. H. R. R. Co.*, 19 id. 341; *Chapman* v. *Palmer*, 77 id. 54; *Slater* v. *Mersereau*, 64 id. 138 ; *Creed* v. *Hartman*, 29 id. 591.)

FINCH, J. The defense in this case rested upon substantially two grounds. The first was that the servant, in exposing the boiler to a greater pressure than the one hundred and fifty pounds directed by the master, was doing an independent, willful, and criminal act of his own, outside of and beyond the scope of his employment and of the master's business. The second was that the plaintiff, by stopping in the highway to watch the result of an experiment, possibly dangerous, and persisting in remaining after having been warned of the danger and requested to leave, was guilty of contributory negligence. Both of these defenses were expressly withheld from the jury, and ruled adversely to the defendants as matter of law. As to the first defense the trial judge said : " I shall charge that the defendants are liable for the acts of Carter in testing this boiler." And again : " I shall hold that the defendants are liable for the injury, though it was caused by the act of their servant, and though the servant tested the boiler beyond a degree limited by them." The promise thus made was faithfully fulfilled in the charge itself. The jury were told that if they found that testing the boiler in the street was a negligent and careless use of the street, then the only remaining question was

the amount of damages; and that if they found that such use of the street was not negligent and careless, but nevertheless found that "the way" in which "the test" was made was negligent and careless, they should then go to the question of the amount of damages. The point of the ruling was further intensified by the explicit refusal to charge each of the two propositions, that the holding down of the safety-valve, under the circumstances, was such a careless, willful, wanton, wrongful and criminal act as not to be within the scope of Carter's employment, and that such act was a wrongful act of Carter, and not of the defendants; and also that if the jury find that Carter, in testing the boiler beyond one hundred and fifty pounds' pressure, was not acting within the scope of his employment by the defendants and in their business, plaintiff cannot recover."

The ruling upon the second defense, that of contributory negligence, was equally positive and distinct. The learned judge said: "I shall charge there is not sufficient evidence of contributory negligence in this case to defeat a recovery." And he did charge that "the mere fact that this plaintiff stopped to look at this experiment that was being performed before his eyes, and did not pass immediately by, is not such an act as the law deems to be contributory negligence." And again, the ruling was made expressly a ruling of law by a refusal, upon the defendants' request, to permit the question of contributory negligence to be submitted to the jury.

The questions, therefore, presented by this appeal are, whether there was any evidence fairly tending to prove that the act of Carter in raising the pressure beyond one hundred and fifty pounds was outside of the scope of his master's business, and was his own personal and independent act; and, secondly, whether there was any evidence tending to prove contributory negligence on the part of the plaintiff.

The first inquiry will be more safely answered by a recurrence to the general rule established in this court, and which must be our guide when we approach the facts. Two cases have stated that general rule with perhaps as much of precision

and accuracy as was possible. (*Mott* v. *Consumers' Ice Co.,* 73 N. Y. 543; *Rounds* v. *Del., L. & W. R. R. Co.,* 64 id. 129.) In the earlier of these two cases it was held that the master is responsible for the wrongful act of the servant, causing injury to a third person, whether the act was one of negligence or positive misfeasance, provided the servant was at the time acting for the master, and within the scope of the business intrusted to him; that this is so although the servant departs from the private instructions of the master, if still he is engaged in doing the master's business; and that a willful act by the servant which will exempt the master from liability for the tort must be done outside of the servant's duty and his master's business. In the later of the cases cited the doctrine was declared that if a servant goes outside of his employment, and without regard to his service, acting maliciously or in order to effect some purpose of his own, and wantonly commits a trespass, or causes damage to another, the master is not responsible; so that the inquiry is whether the wrongful act is in the course of the employment, or outside of it and to accomplish a purpose foreign to it. In the latter case the relation of master and servant does not exist so as to hold the master for the act. Each of these cases followed the doctrine of *Cosgrove* v. *Ogden* (49 N. Y. 255), in which the rule was accurately stated and with some useful illustrations. It was there said that the test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master, but whether it was done in the prosecution of the business which the master employed the servant to do; and the distinction is illustrated by the case of the owner of a building who has employed a servant to remove the roof. If, it was said, the owner directs the servant to throw the materials upon his lot, where no one would be endangered, and the servant, disregarding this direction, should carelessly throw them into the street, causing injury to a passenger, the master would be responsible therefor, although done in violation of his instructions, because it was done in the business of the master; but should the servant, for some purpose of his own, intentionally

throw material on a passenger, the master would not be responsible for the injury, because it would not be an act done in his business, but a departure therefrom by the servant to effect some purpose of his own.

The distinction thus drawn must be the test of the master's liability in the case before us. The defendants were boiler-makers in the city of Binghamton, and having completed a boiler for a customer, placed it in the public street in front of their premises, and directed Carter, their superintendent, or master mechanic, to test it by starting the fires, and raising the steam. The customer requested of the defendant, Shapley, in the presence of Carter, that the boiler should be tested under a pressure of one hundred and eighty pounds. Shapley replied there was no use of testing it to one hundred and eighty; that one hundred and fifty was enough, since its ordinary use would not require over one hundred to one hundred and twenty-five pounds pressure. Carter, and King, the proposed purchaser, started for the street. On the way, the latter again expressed a wish for a test to one hundred and eighty pounds. Carter answered : " I will test it to two hundred any how ; I had as lief test it to four hundred ; you can't burst it." The fires were lighted and the experiment began, with the safety-valve loaded to a pressure of one hundred and ninety-eight pounds. That point was reached, and the escaping steam indicated at least that pressure. By this time the customer had gone, but Carter, with a reckless confidence in the strength of the boiler, sent two of the men to the shop for additional weights, and before their return, took hold of the lever, first with one hand and then with both, holding it down. On the instant, the explosion occurred, scattering death and injury around.

About these facts there is neither dispute nor contradiction. We must measure them by the rule already stated, and determine whether they raised a question of fact which ought to have been submitted to the jury. In testing the boiler Carter was acting in the master's business, and in the line of his own employment. That was the master's duty intrusted to the

servant.   The experiment of actual trial was an essential ele-
ment closing and finishing the manufacture.   The test was an
ordinary and usual act in the business, and had been many
times before applied by the act of the same servant.   In mak-
ing the test the latter went beyond the master's wish.   There
was no peremptory command to stop at a pressure of one hun-
dred and fifty pounds.   What was said was advisory merely;
the expression of an opinion by the master that such limit was
sufficient.   But the customer was not satisfied.   He desired
the test of a stronger pressure.   The servant, in granting it,
was acting for the master; seeking to satisfy the master's cus-
tomer; establishing the strength and perfection of the master's
workmanship; and this was just as true after one hundred and
fifty pounds was passed as before.   The servant was reckless
and fool-hardy in his over confidence, but even if wanton and
willful, and going beyond the master's direction, the latter is
not excused, since the servant was still testing the boiler; do-
ing an act within the scope of the master's business, and in the
plain and definite line of the servant's employment.   How can
we apply the contrary theory to the existing facts?   Did Car-
ter go outside of his employment when the steam gauge indi-
cated a pressure beyond one hundred and fifty pounds?   Was
he then acting without regard to his service, and to accom-
plish some purpose of his own foreign to his service?   What
was, or could have been, that foreign, independent, personal
purpose, having no connection with the business of the mas-
ter?   There is not a shadow of evidence of its existence.   No
fact in the least indicates any such purpose or aim.   It is idle
to suppose that he meant to explode the boiler, and not only
commit suicide, but involve innocent bystanders in the catas-
trophe.   There was plainly no purpose, no object, no aim, ex-
cept to test the boiler beyond the master's wish, in the rash
and reckless confidence that it would bear the strain.   In so
doing he was engaged in the master's business although going
beyond his directions.   How, then, was there any question for
the jury?   The learned counsel for the appellants tersely and
precisely touches the exact point of the controversy when he

claims that " it was the intervention of Carter's will, stepping in to accomplish an *individual* purpose, *foreign* to his authority " and beyond it, which caused the explosion.   But we see no atom of evidence indicating any such individual or foreign purpose.   What was it, we are compelled again to ask; and where is the proof ?   Plainly, it exists nowhere, unless in the fact that the master's wish was not heeded.   But that fact tends to no such result.   Carter was still serving the master, still testing the boiler, and if the experiment had been successful it would have been to the master's · credit, and for the master's benefit.   We think, therefore, the trial judge was right in withholding the question from the jury.   The facts were undisputed and did not admit of different or contrary inferences. The question became purely a question of law and was correctly determined.

We pass now to the question of contributory negligence. While the boiler was in the street and the test was being applied, the plaintiff approached and stopped.   He had a right to be in the street, and to pass by the boiler.   He had also a right to stop and observe what was occurring.   The question, however, is not one of right, but of ordinary prudence in its exercise.   The boiler was in the street, with the fires lighted. It was directly in front of a boiler manufactory.   It was connected with no machinery which it was driving or setting in motion.   It was plain to the commonest observation that it was a new boiler, being tested.   But this was not all.   The plaintiff was warned of what was going on, and of the possible danger to which he was, voluntarily and without necessity, exposing himself.   A witness testified that, a few minutes before the explosion and while standing within two feet of plaintiff, and both of them within six feet of Carter, he, the witness, spoke to the latter and said : " It isn't a good place to be standing here while you are testing that," and he said : " No, and I wish they would all leave."   He said he wished " they would all go away; it wasn't a good place to stand around." The witness acted on the suggestion, and not only went away himself, but said to the others : " Boys, come ; let's go away."

It is very certain that the plaintiff heard this warning, for he did not choose to take the witness stand and deny it. He knew, therefore, that he was watching an experiment, the issue of which he could not certainly foresee. The very idea of a test implies the possibility of failure. Whatever of risk was inseparable from the first test of an untried boiler, quite certain to be carried beyond the pressure of its ordinary use, this plaintiff took upon himself, without necessity or just occasion, and merely from a motive of idle curiosity. He is told that it is a test which is in progress, and warned of possible danger. Others prudently withdraw, but he takes the chance of remaining. The explosion happens, and he is seriously injured. The court held that these facts justified no inference of contributory negligence, and refused to submit the question as one of fact to the jury. The learned judge said that the only evidence of plaintiff's negligence was that he was there. But the person injured is always " there." Whether he ought to be there, whether it was necessary or prudent to be there, and why and under what circumstances, are often important questions. In the present case, while there is no dispute about the facts, the inquiry remains, whether there is not ground for dispute as to the proper inferences to be drawn from them; for negligence is not a fact, which is the subject of direct proof, but an inference from facts put in evidence. (Wharton on Neg., § 420.) It was said, in *Ireland* v. *O. H. & S. Plank-road Co.* (13 N. Y. 533) that negligence is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their weight and force considered; and that, in such cases, the inference cannot be made without the intervention of a jury, although all the witnesses agree in their statements. To the same purport are more recent cases. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 469 ; *Hart* v. *H. R. Bridge Co.*, 80 id. 622.) We are, therefore, to inquire whether the facts proved were at all capable of sustaining an inference of negligence. If they were, the jury and not the court were to determine whether the

inference should be drawn or not. In other words, to support the ruling at the trial, we must be able to say that the facts did not permit or tend to establish an inference of negligence. It is best, therefore, to get a little closer to the question. If a steam fire-engine was working on a street corner, a passer-by, who stopped to observe its movement or construction, could not be said to have been negligent, although injured by an explosion which would not have harmed him but for his lingering near. Why? Evidently because he has a right to assume that there is no danger, since the machine has been tested, and actual trial and use has demonstrated its safety, and that no dangerous experiment is in progress. But suppose on approaching it he is told that the machine is having its first test, that it is an experiment which is in progress, and that, therefore, it isn't a good place to be standing near, is it certainly an act of ordinary prudence for the observer to remain and take the chances of the experiment? We must grant that he is lawfully there, and that in the absence of warning he owes no duty of unusual or extra caution. But with the warning of danger arises the duty of prudence and self-protection. So it was said in *Ernst* v. *H. R. R. R. Co.* (35 N. Y. 26). The testator, it was held, was lawfully upon the public highway ; the right he had to use it was as perfect as that of the defendant to cross it ; but if warned of the approach of an engine by the customary signals, or if by other means made aware of its proximity, it was his duty to avoid exposing himself to injury. The plaintiff here owed no duty of unusual care unless fairly warned of possible danger. The evidence tends to show that such warning was given. No necessity, no business, no duty kept the plaintiff in presence of the boiler. It was possible, easy and prudent for him to leave the place of danger. How then can we say that no inference of negligence was possible ; that men of ordinary prudence would have stayed and risked the result of the experiment? At least, how can we say it as matter of law? We think the question should have been submitted to the jury. We express no opinion upon it as a question of fact. It is our duty not to do so, and to leave the jury to approach it, if again

presented, utterly uninfluenced by any expressions of our own, and which have related solely to the question of law. Whether the warning was in fact given, whether the plaintiff heard it, whether it was plain enough fairly to apprise him of danger, are all questions which they may have to consider and upon which we do not pass. It follows from this view of the case that there must be a new trial.

The order should be reversed; and new trial granted; costs to abide the event.

FOLGER, Ch. J., EARL and RAPALLO, JJ., concur; AN-DREWS, MILLER and DANFORTH, JJ., dissent.

Order reversed.