THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. J. D. RANDALL.

1. SERVANT — *Disobeying Instructions — Liability of Master.* The master is responsible for the act of his employé or servant when the act is done in the prosecution of the business that the employé or servant was engaged by the master to do. When, therefore, the employé or servant, while engaged in the prosecution of the master's business, deviates from his instructions as to the manner of doing it, this does not relieve the master from liability for his acts.

2. MASTER AND SERVANT — *Instructions, Disobeyed — Liability.* Through an unavoidable accident a cattle train was derailed, and to clear away the wreck it was necessary to release the cattle from two or three of the cars; some of the cattle so released escaped from control and ran over the public highway and through adjoining fields. The railroad company's claim agent, whose duty it was to look after the cattle and see that they were returned to the company for reloading, was present at the wreck; he instructed the section foreman to get some men to collect the cattle together and reload them; the foreman employed a young man to assist in rounding up and driving back the cattle, and told him to get a horse, if he had one, to aid in their work; the young man took the horse of his father, without the latter's knowledge or consent, and used the same in collecting and driving back the cattle to the cars; while being used in the service of the company, the horse was severely gored and injured by one of the cattle. *Held,* That as the section foreman and young man were acting in the company's business, although in taking and using the horse they were beyond their instructions, the company is liable for the damages to the horse

*Error from Johnson District Court.*

On the 20th day of September, 1886, *J. D. Randall* filed his petition against *The Atchison, Topeka & Santa Fé Rail-*

*road Company,* in the district court of Johnson county, in the words and figures following, to wit (omitting caption):

"1. And now comes the plaintiff, and for his cause of action against the defendant herein, states that the said defendant, the Atchison, Topeka & Santa Fé Railroad Company, was at the date of the grievances hereinafter complained of, has ever since been, and is now, a corporation duly authorized and acting under and by virtue of the laws of the state of Kansas, and operating its line of railroad through said county; that on October 16, 1884, defendant was transporting over its line of road through Cedar Junction, in said county, as a common carrier, a large number of Texas steers, animals which are, as a class, of an ugly, dangerous and vicious disposition, from some point on its road to plaintiff unknown, to Kansas City, Mo.; that while so transporting said steers, the defendant at Cedar Junction, allowed some of them to escape from the cars and to gore, hook and injure a certain valuable mare belonging to this plaintiff; whereby this plaintiff has been damaged in the sum of $75 in medicines, care and attendance in attempting to cure said mare, and also in the further sum of $150, in deterioration of the value of said mare. Wherefore, this plaintiff prays judgment against the said defendant for the sum of $150, and for costs of suit.

"2. Plaintiff for his second cause of action against defendant herein, states that the said defendant, the Atchison, Topeka & Santa Fé Railroad Company, was at the date of the grievances hereinafter complained of, has ever since been, and is now, a corporation, duly organized and acting under and by virtue of the laws of the state of Kansas, and operating its line of railroad through said county; that on October 16, 1884, defendant was transporting over its line of road, through Cedar Junction, in said county, as a common carrier, a large number of Texas steers, which were and are, as a class, of an ugly, dangerous and vicious disposition, from some point on its road to plaintiff unknown, to Kansas City, Mo. Plaintiff says that defendant, through the carelessness of its agents and servants in not properly turning the switch near Cedar Junction, caused some of the cars in which said steers were being transported, as aforesaid, to be broken open, so that some of the steers escaped therefrom, and that the defendant, through its agents and servants, carelessly and negligently allowed said steers to escape from their custody and to run at large through the town of Cedar Junction and the neighboring highways and com-

mons, and while so at large, one of the said steers did, on the said 16th day of October, 1884, run against, gore and injure a valuable mare, the property of this plaintiff, while in the public streets of the said village of Cedar Junction; whereby this plaintiff has been damaged in the sum of $75 in medicines, care and attendance in attempting to cure said mare, and also in the further sum of $150 in deterioration of the value of said mare.

"Wherefore, plaintiff prays judgment againgt said defendant, the Atchison, Topeka & Santa Fé Railroad Company, in the sum of $150, and costs of suit.

"3. Plaintiff for his third cause of action against defendant herein, states that the said defendant, the Atchison, Topeka & Santa Fé Railroad Company, was at the date of the acts hereinafter complained of, has ever since been, and is now, a corporation, duly organized and acting under and by virtue of the laws of the state of Kansas, and operating its line of railroad through said county; that on October 16, 1884, plaintiff was the owner of a valuable mare, which the defendant, through its agents and servants, took from plaintiff's premises, and employed in and about their business at Cedar Junction, Kansas.

"Plaintiff says that the taking and employment of said mare as aforesaid, were without his knowledge or consent.

"Plaintiff further says that while so employed by said defendant, his said mare was gored and wounded by a steer, and that by reason of said acts of defendant he has been damaged in the sum of $75 in procuring medicines in attempting to cure said mare, and that he has been damaged in the further sum of $150 in deterioration in the value of said mare by reason of said injuries.

"Wherefore, plaintiff prays judgment in the sum of $150 and costs of suit."

On the 16th day of October, 1886, the railroad company filed the following answer:

"Now comes the defendant in the above-entitled cause, and for answer to plaintiff's petition denies each and every allegation therein contained.

"For a second and further defense, the defendant says:

"That the animals which it was transporting as a common carrier at the time of the accident complained of by plaintiff, were of the class known as 'domestic animals.'

"That the defendant had no knowledge or means of knowl-

edge of said animals, or any of them, being of an ugly, dangerous and vicious disposition, to a greater extent than any domestic cattle.

"The defendant therefore prays judgment for costs."

Subsequently, the plaintiff filed a reply denying every allegation in the answer, inconsistent with the petition.

Trial was had at the May term of the court for 1887, before the Hon. JOHN T. LITTLE, judge *pro tem.*, a jury being waived. The court made and filed the following conclusions of fact:

"1. That the defendant is a common carrier operating a railway within and through the county of Johnson and state of Kansas.

"2. That in the month of October, 1884, the defendant was transporting on its cars a mixed lot of Texas and Colorado steers through said county to Kansas City, Mo.

"3. That at Cedar Junction, in said county, without any fault of the defendant, the cars became derailed, and the defendant's servants opened the doors and negligently permitted said steers to wander over and through the streets and on the common, in and through said Cedar Junction.

"4. That defendant by its servants ordered the section foreman to get and bring said steers up for reloading.

"5. That Sam. Randall, a son of the plaintiff, at the request of said foreman procured the horse in controversy from his father's stable, without his consent, and in driving said steers to the train, one, a Texas steer, rushed upon the horse and gored and wounded it in the side. The mare was the absolute property of plaintiff.

"6. That plaintiff nor his son in any manner contributed to the injury of the horse.

"7. That when defendant's servants turned said steers out of the cars, they were negligent in not retaining them, as they might have done, near the cars and within their own inclosure.

"8. That by the negligence of defendant's servants the plaintiff sustained the damage complained of.

"9. The damage sustained by plaintiff for the injury of the horse alone was $137.50.

"10. That Texas steers are naturally vicious, and when permitted to run at large are dangerous.

"11. That after the wreck it was necessary to uncar said cattle, for their own protection and to clear the wreck."

And thereon the court found as a conclusion of law, that there was due to the plaintiff from the defendant, as damages to said mare, the sum of $137.50. Judgment was subsequently entered in favor of the plaintiff and against the defendant for that amount, together with all costs. The railroad company excepted, and brings the case here.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Parker & Seaton,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: It appeared upon the trial of this case that on the morning of October 16, 1884, through an unavoidable accident, a cattle train upon the road of the Atchison, Topeka & Santa Fé Railroad Company was derailed near Cedar Junction, in Johnson county, and two or three of the cars were thrown from the track; that, in order to clear the wreck, it was necessary to let out the cattle from some of the cars, and these were driven into a sort of pocket in the fences along the right-of-way; that, while the men were engaged in clearing away the wreck and getting the cars upon the track, some of the cattle escaped out of the pocket, running through the streets of the junction and on the hillside in the brush; that they were at large for the space of four hours—it having taken that time to clear the wreck away; that C. M. Foulks, the railroad's claim agent, was present at the wreck, and that it was his duty, together with those he might employ, to look after the cattle and return them to the control of the company; that Mr. Foulks instructed the section foreman, Joe Landry, "to get some men, and we would drive those cattle around, and take them up and reload them;" that Landry saw Samuel Randall, the son of J. D. Randall, the plaintiff, upon the street; that he asked him "if he would go and hunt the cattle and get them in the corral?" that he also asked him, "if he had a horse to ride?" that he answered "he had;" that young Randall procured his father's young mare, without

leave or license, and assisted the other employés in recovering and driving back the cattle; that after being driven back to the cars, but before the cattle were reloaded, one of them, (a Texas or Colorado steer,) being excited and angry, ran against and gored severely the mare belonging to plaintiff. Afterward, Samuel Randall was paid by the railroad company for his work in assisting in recovering and driving the cattle. Subsequently, the plaintiff brought his action against the railroad company to recover for the injury to his mare, alleging, among other things, that the taking and employing of his mare were without his knowledge and consent, and that he was damaged in the sum of $75 in procuring medicines and attention for the mare, and in the further sum of $150 for the deterioration in the value of the mare by reason of her injuries. The case was tried by the court without a jury, and judgment rendered against the defendant for $137.50, together with all costs.

We think it unnecessary to refer to the first and second counts of the petition, and therefore shall confine ourselves to the question whether, upon the undisputed evidence, the railroad company was responsible, under the allegations of the third count, for the damages recovered.

On the part of the railroad company it is contended that Landry, the section foreman, had no authority to hire or use the mare, and therefore that the employment of the plaintiff's son, with the mare, was beyond his authority, and that the railroad company is not responsible for this act, and therefore not liable for the use of the mare in driving up the cattle, or for her being brought near the wreck where she was injured. Under the evidence in the case, Landry and young Randall were the employés or servants of the railroad company. They were at the time the mare was taken, used and injured, engaged in the service of the railroad company. There is no pretense that either Landry or Randall was endeavoring to do anything for himself. It is scarcely possible that young Randall could have used the mare as he did, in rounding up and driving the cattle, without being seen by Mr. Foulks, who had full authority to represent the company. The mare used by

Randall was useful in recovering and driving the cattle, and all of the acts done by Landry and Randall were done by them in the prosecution of the business of the company. It is not to be relieved because Landry departed from his instructions in collecting and driving the cattle. The test of the master's responsibility for the act of his servant is not, whether the act was done according to the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed by the master to do. It is true that Mr. Foulks instructed Landry to get men, not horses, to assist in driving and reloading the cattle; but young Randall did not know the limit of Landry's instructions. He acted upon the request of Landry, and his acts, as well as those of Landry, were in the furtherance of the company's business. None of the employés or servants of the company objected to the use of the mare, and as the cattle were scattered about in various directions for half a mile, the use of the mare was beneficial and necessary. Landry, for the benefit of the company directed young Randall to get the mare, and the company is responsible, although the act of Randall was wrongful in taking the mare without his father's knowledge or consent.

*1. Instructions, disobeyed by servant; liability of master.*

*2. Wrongful act of servant; liability for damages.*

To make the corporation responsible it is not necessary, as plaintiff in error contends, that the principal should have directly authorized the particular wrongful act of the agent, or should have subsequently ratified it. Judge Story, in treating of the liability of principals for the acts of their agents, says:

"The principal is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or participate in, or indeed know of such misconduct, or even if he forbade or disapproved of them."

And to sustain this he cites numerous authorities. "In all such cases," he says, "the rule applies, *respondeat superior,*

and it is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings either directly with the principal, or indirectly with him through the instrumentality of agents." (Story on Agency, § 452; *Wheeler & Wilson Mfg. Co. v. Boyce*, 36 Kas. 350; *Ochsenbein v. Shapley*, 85 N. Y. 214; *Cosgrove v. Ogden*, 49 id. 255; *Garretzen v. Duenckel*, 50 Mo. 104.)

The mare of the plaintiff was taken from a place of security, and brought by the employés of the railroad company for the use of the company into a place of danger, and there was injured without the fault or negligence of the owner. For the damages resulting from the injury the company is liable, because we have already held that the company is liable for the acts of Landry and young Randall, done in rounding up, driving and reloading the cattle. With the views expressed, the other matters discussed in the briefs need not be examined or decided.

The judgment of the district court will be affirmed.

All the Justices concurring.