CHARLES H. KEEP and Others, Appellants, v. MAURICE G. WALSH and Others, Respondents.

*Negligence — liability of the master for the acts of his servant — when a negligent unauthorized act is within the scope of the employment.*

In an action brought by the owners of a store to recover the value of a plate glass window broken by one of the defendants' clerks with a handcart which he had borrowed, without the authority or knowledge of the defendants, for the purpose of moving some of the latters' goods, the court charged the jury that it was necessary to a recovery by the plaintiffs that they should find that the clerk was acting under the instructions of the defendants, or that he was acting independent of any directions previously given, but that his acts became

The law as it thus stood received consideration in *Saunders* v. *Springsteen* (4 Wend. 429), where it was held that if a person occupies one entire farm, and a division line between two adjoining towns passes through the same, such farm can be assessed for taxes only in the town where the owner or occupant resides, although the farm comprises portions of different lots, and such lots lie in different towns. (See, also, *Ward* v. *Alyesworth*, 9 Wend. 281.)

No further change appears to have been made in the statute until 1827–1828, when the Revised Statutes were first enacted, and the rule was prescribed in this

known to the defendants and were approved during the time that he was engaged in the service and before he attempted to return the cart.

*Held,* that the charge was erroneous :

That the test of the liability of a master for a negligent act of his servant depends upon the question whether the servant is acting within the scope of his employment and in the business of the master, and that if the motive which prompted the act and the purpose sought by it, are within the scope of the servant's employment and in the business of the master, and are not independent of or outside of his employment or disconnected with the master's business, the master is liable for the act.

APPEAL by the plaintiffs, Charles H. Keep and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Niagara on the 24th day of July, 1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 14th day of August, 1896, denying the plaintiffs' motion for a new trial made upon the minutes.

Plaintiffs are the owners of a store known as No. 99 Main street, in the city of Lockport; it was leased by them to the American Express Company, and was occupied by the company on July 22, 1895. The defendants occupied a double store, Nos. 94 and 95, on the same street, and were there carrying on a retail dry goods busi-

form: "When the line between two towns or wards divides a farm or lot, the same shall be taxed, if occupied, in the town or ward where the occupant resides. If unoccupied, each part shall be assessed in the town in which the same shall lie; and this whether such division line be a town line only or be also a county line." (1 R. S. [1st ed.] 389, § 4.)

No change appears to have been made in the Revised Statutes so far as the section quoted is concerned, until 1871, when that section was amended by chapter 287 of the Laws of 1871, so as to read as follows: "When the line between two towns or wards divides a farm or lot, the same shall be taxed if occupied, in the town or ward where the occupant resides, *except when such town line shall be also a county line,* in which case each part shall be assessed in the town in which the same shall be situated, in the same manner as unoccupied lands are now assessed."

The last-named act was repealed by chapter 355 of the Laws of 1872, and no legislation was substituted for it. According to the familiar rule, a repeal of the amendatory act does not revive the original act, but both fall together; so that this left the State without any statutory rule upon the subject. (*People ex rel. Canajoharie Nat. Bank* v. *Supervisors,* 67 N. Y. 109. *Harris* v. *Supervisors,* 33 Hun, 279, 282; *Hampton* v. *Hamsher,* 46 id. 144.)

As said by the court in the case last cited, the Legislature doubtless did not intend this result, but, however that may be, it proceeded, by chapter 315 of the Laws of 1886, to re-enact section 4 of the Revised Statutes, so repealed, by pro-

ness on the last-named date. They had purchased another stock of goods then located in a store sixty feet distant from their store and on the same side of the street. The defendants had in their employ a number of clerks, among whom was Fred J. Conniff. The clerks and employees of defendants were directed to move the stock of goods so purchased to the stores occupied by defendants, and to move it by hand. One handcart was procured and furnished by defendants to be used in moving the stock and fixtures when found

---

viding that "When the line between two towns, wards or counties divides a farm or lot, the same shall be taxed, if occupied, in the town, ward or county where the occupant resides; if unoccupied, each part shall be assessed in the town, ward, village or county where the same shall lie.

"§ 2. All acts or parts of acts inconsistent with this act are hereby repealed."

This is the statute now in force, and is the rule which governs the decision of this case, unless certain other statutes passed in aid of the construction of the Midland railroad, so called, prescribe a different rule for the town of Vienna.

In 1866 an act was passed authorizing said town, with others, to subscribe to the capital stock of said railroad, and to issue bonds therefor; and in 1868 said town was duly bonded according to the provisions of that act for the sum of $68,500. (Laws 1866, chap. 398.)

This act does not purport to place an actual lien upon the lands of the bonded town, but requires the board of supervisors to cause to be assessed, levied and collected upon the real and personal property of the town in the same manner as other taxes are assessed, levied and collected, sufficient moneys for the redemption of the bonds and interest. These bonds matured in 1888 and were renewed pursuant to chapter 316 of the Laws of 1886 to the amount of $55,000; and when this action was commenced renewal bonds to the amount of $42,000 were outstanding, and at the time of the trial $39,000 of the same had not yet matured and were unpaid.

By chapter 152 of the Laws of 1882 the original bonding act of 1866 was amended by adding thereto the provision that "all real property assessed or liable to be assessed upon the assessment roll of any town at the time of issuing bonds by said town pursuant to this act and all acts amendatory thereof, shall continue to be assessed and assessable for all purposes whatsoever in said town until said bonds or any renewals thereof are fully paid; and if the owner of such real property does not reside within said town, then such real property shall be assessed as non-resident land or to any occupant of said real property actually residing within said town."

Chapter 21 of the Laws of 1883 made a slight change, but it is not material to this controversy.

Thus it appears that from an early period in the history of the State until 1872 there was a uniform, just and convenient rule governing the subject under consideration. While the statute was occasionally changed, the variations were slight and tended to perfect the rule in the interest of justice and convenience.

necessary. The clerk Conniff, without the direction, authority or knowledge of the defendants, went across the street and borrowed a handcart of the American Express Company and with it moved a showcase which was a part of the stock and property purchased by defendants which was to be moved to their store, and then returned the cart to the express company; and, while returning the same, broke a plate glass window in plaintiffs' building with the cart. The defendants gave Conniff no direct authority to borrow the

---

The rule was just, because taxation was authorized in the town where the occupant and his family resided, where the buildings and personal property were situated, and where the persons and property for the protection of which taxes are in the main necessary, lived and was located. The convenience of the rule is obvious, as it enables the owner or the occupant to pay but one bill of taxes instead of two, and to make the payment at a place presumptively nearer his own home.

The rule was in force when the act authorizing the bonding of towns in aid of the Midland railroad was passed, as well as when the bonds were issued by the town of Vienna for that purpose. When the bonds were issued, therefore, the method of assessing a farm lying partly in the town of Vienna and partly in an adjoining town was prescribed by the Revised Statutes as above stated. After the repealing act of 1872, for the period of ten years, there seems to have been no rule prescribed by statute to regulate the method of assessment in such cases. In that year no general rule was provided by the Legislature, but a special rule applicable to those towns which had issued bonds under the enabling act of 1866, to help build the Midland road. This was an innovation upon what until 1872 had been the established policy of the State.

The act of 1883, under which the town of Vienna claims the right to assess the lands of the plaintiff which lie in that town, limited the operation of the act of 1882 to lands within the corporate limits of the town, thus correcting an unfortunate oversight resulting in obvious injustice. If, when the town of Vienna was bonded, a person owned a farm lying partially in that town and partially in an adjoining town, but with the farm buildings in the former, and afterwards sold all of the farm except that portion situated in the town of Vienna to a person living outside of that town, according to the act of 1882 the land thus sold would still be assessable in Vienna. The act of 1883, however, removed this evil, as already pointed out.

From 1872 to 1886 there was no general rule governing the taxation of a farm situated in two towns; but in that year the old rule of the Revised Statutes was restored; and not only that, but all acts or parts of acts inconsistent with that rule were repealed. The town of Verona relies upon this act in claiming the right to assess the entire farm in that town; so that the real question presented for decision is whether the repealing clause in the act of 1886 applies to the act of 1883 with reference to assessing farms where a part of the land was situated in a town bonded under the Midland Railroad act.

American Express Company's cart and knew nothing about Conniff's borrowing or using it.

*Taylor & Nicholls*, for the appellants.

*P. F. King*, for the respondents.

GREEN, J. :

The learned trial justice charged the jury that in addition to proving damage and the negligence of defendants' servant in causing same, "The plaintiff must establish more than those facts in order

The learned counsel for the town of Vienna claims that the object of the Legislature was simply to restore the old rule of the Revised Statutes that had been inadvertently repealed. On the other hand, the position of the learned counsel for the town of Verona is that the object of the Legislature was not only to restore the old rule, but to wipe out all legislation inconsistent therewith, so as to make the rule uniform in its operation throughout the entire State.

The general rule is that a special statute, providing for a particular case, as applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the Legislature to repeal or alter the special law is manifest, although the terms of the general act would, if strictly construed, but for the special law, include the case or cases provided for it. (*Buffalo Cemetery Association* v. *City of Buffalo*, 118 N. Y. 61; *McKenna* v. *Edmundstone*, 91 id. 231, 233; *Aldinger* v. *Pugh*, 32 N. Y. St. Repr. 513; S. C., 57 Hun, 181.) But, as said by Judge ANDREWS in *The People* v. *Jaehne* (103 N. Y. 182, 194): "It will be found, I think, on examining the cases in which the courts have held that a special law was not repealed by a subsequent general law on the same subject, that they are as a general rule cases where the Legislature was not dealing directly with the subject of the prior law, and it was not in the mind of the Legislature when the general law was enacted, or where the special law was part of a system of local administration, or where it was possible to assign a reasonable motive for retaining the special and peculiar provisions of the special act, notwithstanding the enactment of a subsequent general rule covering the same subject."

The general act upon its face had two objects to accomplish: *First*, to restore the old rule of the Revised Statutes, and, *second*, to repeal some acts or parts of acts then in force that were inconsistent with the general act. What is the Legislature presumed to have had in mind when it passed the general act? Clearly, the subject of a farm situated partly in one town and partly in another, with all the buildings in the town where the occupant resides. It had under consideration the question of how farms divided by town lines should be assessed. That was the subject also of the special act, only it was confined to particular towns. Both acts dealt with the same subject, and hence it cannot be presumed that the Legislature, when it passed the general, did not have the special act in mind. Moreover, there is no reason that I can conceive of for adding the repealing clause by a separate and independent section, unless it was intended to apply to the act

to justify you in reaching a conclusion adverse to that of the defend-
ants. It must appear that the servant was acting under the instruc-
tions of the defendants, or that he was acting independent of any
direction previously given, but that the acts of the servant became
known to the defendants and were approved during the time that he
was engaged in the service and before he attempted to return the
truck to the American Express Company's office."

To this the plaintiffs' counsel excepted, and in that connection
asked the court to charge "that all those elements were not neces-
sary; that if he was given general instructions to remove those

of 1882 as amended in 1883. The Legislature obviously intended to repeal some-
thing by that clause. What was it unless it was the act of 1882, as amended in 1883?
No other act has been called to my attention that is inconsistent with the general act.
The Legislature, when about to restore the command to assess where the occupant
resides, found a special act where the command was to assess where the land is
situated, and, in restoring the former, intended, as I think, by the general repeal-
ing clause, to do away with the latter. This is not a case where the Legislature
lays down a rule for the entire State, apparently without any repealing clause.
There, if there is any repeal, it is by implication; that is, without special refer-
ence to the acts repealed. The object in the case in hand was to restore the old
rule in its integrity, and to do away with the innovation and encroachment that
had been made upon that rule. There is no injustice in this, because in the long
run there would be as much land situated in one town, but not taxed there, as in
the other; but there would be injustice in letting the general and special acts both
stand at the same time, because a farm situated as the plaintiff's is would be tax-
able in Vienna as to the part located there, by virtue of the special act, while a
farm located in both towns, but with the buildings located in Vienna and the
occupant residing there, would be taxable as an entirety, including that part
situated in Verona, by virtue of the general act. In this way both rules would
operate to the advantage of one town only, while neither rule would protect the
other town in any way whatever. It is not reasonable to suppose that the Legis-
lature intended such a one-sided rule. None of the reasons mentioned by Judge
ANDREWS in the quotation above made from his opinion exist in this case, and no
reasonable motive has been assigned for retaining the special act, notwithstand-
ing the passage of the general act covering the subject. I think the special act
was repealed by the general act, and the following authorities are cited in sup-
port of that position: *People ex rel. Vanderveer* v. *Wilson* (125 N. Y. 368); *Crom-
well* v. *MacLean* (123 id. 484); *Anderson* v. *Anderson* (112 id. 111); *People* v. *Gold
& Stock Tel. Co.* (98 id. 75); *Heckmann* v. *Pinkney* (81 id. 211); *City of Buffalo* v.
*Neal* (67 N. Y. St. Repr. 15; S. C., 86 Hun, 76).

The point is made in behalf of the town of Vienna that, if the general act
repeals the special act, the former is unconstitutional, because it impairs the obli-
gation of a contract. This position is based upon the act of 1882, which provided
that all the property assessed or liable to be assessed in a town bonded in aid of

goods by the defendants and borrowed this truck for the benefit and in the furtherance of the labor and in the business of the defendants, that then the plaintiffs can recover." By the Court: "I charge he cannot, and give you the exception; there is no such emergency authorizing the witness to depart from the instructions."

We are of the opinion that there was prejudicial error in the portions of the charge excepted to. The plaintiffs were entitled to have the jury instructed that if the plaintiffs were damaged by the negligent act of the servant while he was acting within the general scope of his employment, and if the motive which prompted the act and the purpose sought by it were within the scope of his employment

---

the Midland railroad at the time the bonds were issued should remain assessable for all purposes in that town until those bonds or the renewals thereof were fully paid.

and in the business of defendants, and not independent or outside of his employment, or disconnected with the masters' business, the plaintiffs were entitled to a verdict. ( *Wellman* v. *Miner*, 19 Misc. Rep. 644, and cases cited; *Burns* v. *Poulsom*, L. R. [8 C. P.] 563; *Atchison, etc., R. R. Co.* v. *Randall*, 40 Kans. 421; *Walker* v. *Johnson*, 28 Minn. 147; *Pittsburgh, etc., R. R. Co.* v. *Kirk*, 52 Am. Rep. 675; S. C., 102 Ind. 399; Whart. on Neg. [2d ed.] 167.)

If the jury should find, upon all the evidence, that the act of the servant was no part of his business, nor within the scope of his employment, nor for the benefit of defendants, nor in furtherance of their interest, then they are not liable. If the servant, in borrowing and returning the truck, was carrying out a separate and independent purpose and motive of his own, and in doing so ceased to be an actor within the scope of his employment and within the range of his master's business, then the defendants are not liable. "The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do." (*Cosgrove* v. *Ogden et al.*, 49 N. Y. 255.)

We are of the opinion that the portion of the charge excepted to by the plaintiffs was erroneous, in that the jury was instructed that, before the defendants could be held liable for the negligent acts of their servant, those acts must have become known to the defendants and been approved by them during the time he was engaged in the service, and before he attempted to return the truck to the American Express Company's office.

The judgment should be reversed and a new trial ordered, with costs to abide the event of the action.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.