of said drafts has ever been paid; and that said drafts were drawn by said receiver on account of the indebtedness represented by the certificates upon which this action is brought. The defendant insists that by reason of this judgment against Foster the drafts were merged in the judgment, and extinguished by it, and therefore the order of the court authorizing the issuing of receiver's certificates to pay the drafts, as well as the certificates issued under the order, are void. An examination of the numerous authorities cited by counsel in support of this proposition shows that they were all cases where a judgment had been recovered against one of two or more joint debtors, and it was held that the obligation sued upon was merged in the judgment, and that thereafter no action could be maintained against any of the other joint debtors, even though the judgment remained unpaid. But that is not the case here. The drafts upon which the judgment was procured were not joint obligations of the parties thereto, but were the several obligations of Foster, the acceptor, of the receiver, the drawer, and of the plaintiff, the indorser, and therefore the cases cited do not apply. While the drafts were undoubtedly merged in the judgment recovered against Foster upon them so far as the parties to that action are concerned, yet neither that fact nor the judgment, so long as it remains unpaid, can be asserted to prevent the owner of the original debt for which the drafts were given from pursuing any other lawful remedy to collect the claim. Iron Co. v. Walker, 76 N. Y. 521; Manufacturing Co. v. Connell, 88 Hun, 254, 34 N. Y. Supp. 717. Nor did the delivery of these drafts to the plaintiff by the receiver constitute a payment of the debts incurred by him for building bridges. Roberts v. Fisher, 43 N. Y. 159; Catlin v. Munn, 37 Hun, 23. I conclude, therefore, that the complaint states a cause of action, that there is not a defect of parties, and that the demurrer should be overruled, with costs, with leave to this defendant to answer upon payment of such costs.

Demurrer overruled, with costs, with leave to defendant to answer upon payment of costs.

---

(39 App. Div. 223.)

COGSWELL v. ROCHESTER MACH. SCREW CO.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—LIABILITY TO THIRD PERSONS.
   A packing clerk, in the habit of operating a freight elevator in the performance of his duties, but having no authority to operate it for passengers, does not act within the scope of his employment in conducting a passenger to the elevator to take her to an upper floor, occupied by a tenant of the master; and the master is not liable for negligence committed by him in so doing.

2. SAME—IMPLIED AUTHORITY—SUFFICIENCY OF EVIDENCE.
   A finding that a clerk of a corporation, having no authority, in general, to operate a freight elevator for the conveyance of passengers, was impliedly authorized to do so in a particular instance, so as to render the corporation liable for negligence committed by him in so doing, was not justified by evidence of the particular passenger that, when she asked the clerk for the elevator, the president and secretary of the corporation were present, and that they made no objection when the clerk left the office to

57 N.Y.S.—10

show her the way, where the president and secretary testified that they neither saw nor heard the passenger, and the clerk testified that they were not present when she made the inquiry.

**3. Same—Customary Violation of Rules by Servants.**

The fact that in two isolated instances there has been an unauthorized departure from the prescribed order of business in a master's establishment does not charge him with liability to a third person for a further like departure by a servant, where the unauthorized acts were not brought to the master's attention.

Appeal from trial term, Monroe county.

Action by Harriet J. Cogswell against the Rochester Machine-Screw Company. There was a verdict for plaintiff, and from an order granting a motion for a new trial, made on the minutes of the court, plaintiff appeals. Affirmed.

At the time this action was brought the defendant, a domestic corporation, was the owner of a three-story brick building, situated on Caledonia avenue, in the city of Rochester. The first floor of the building was reached by means of a flight of steps, which extended from the sidewalk to a hall, and in the southeast corner of this hall was a room occupied by the defendant's president and secretary as an office. This room was separated from the hall by a glass partition, and west of it was another room, used as a shop; both rooms having doors which opened into the hall. On the south side of the hall was a stairway, leading up to the second story, connecting with which was another stairway, leading to the third story, and in the northeast corner of the lower hall was an elevator, which was used for the purpose of hoisting freight from one part of the building to another. At the time of the accident which lies at the foundation of this action one William H. Hutchinson was a tenant of the defendant, and as such occupied the third and a portion of the second floors of this building. Access to his rooms was obtained by means of the common entrance on Caledonia avenue and the stairways leading from the first to the second and third floors. On the afternoon of the 5th day of December, 1895, the plaintiff started for Mr. Hutchinson's place of business, in order, if possible, to obtain employment. She was not familiar with the building, never having been there before, and, upon entering the same, inquired of a gentleman, whom she met going out, where she could find the elevator. The person to whom this inquiry was addressed was unable to answer the same, but directed her to the defendant's office. She thereupon went to one of the defendant's rooms, where she met a Mr. Smith, who was in the defendant's employ in the capacity of a packing clerk, of whom she made a similar inquiry, and Smith at once left his work, and started down the hallway towards the elevator, the plaintiff following him. As they walked along, the plaintiff stated to Smith that she wished to see Mr. Hutchinson, and Smith remarked that his office had recently been removed to the second floor. The plaintiff testified that when they reached the end of the hall she stopped for Smith to open the door of the elevator, which he did; that he thereupon turned around, so as to face her; that, without looking up or down, she then stepped through the opening, assuming that the elevator was there, and at once fell to the bottom of the well, receiving injuries which were very painful in their character, and from which it is quite probable she will never entirely recover. The evidence of the plaintiff as to what took place after she entered the building was flatly contradicted in several essential particulars by the defendant's witnesses, and the issues thus presented were submitted to the jury, which found in favor of the plaintiff. A motion was thereupon made for a new trial on the minutes of the court. This motion was granted, and from the order granting the same this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Arthur Warren, for appellant.
Edward Harris, for respondent.

ADAMS, J.   That the defendant was the owner of the building in which the elevator was operated, that the elevator was within its control, and that the young man Smith was in the service of the defendant at the time of the accident, are facts concerning which no controversy arises; and for the purposes of this appeal the verdict of the jury must be regarded as establishing the additional fact that Smith's negligence, unaided by any concurring negligence upon the part of the plaintiff, caused the injuries of which the latter complains.   It follows, therefore, that the defendant is liable, and that the verdict must stand, if Smith, in conducting the plaintiff to the elevator, was acting within the scope of his authority, or with the knowledge and consent of the defendant's officers, either express or implied.

It is sometimes assumed, in cases of this character, that, where the relation of master and servant exists, the responsibility of the former for any negligent act of the latter necessarily follows; and such is undoubtedly the rule, provided the negligent act was committed within the scope of the servant's employment.   When, however, the servant undertakes to carry out a separate and independent purpose of his own,—where, in other words, instead of doing that which he is employed to do, he steps outside of his proper sphere of duty to render some service which he is not employed to render, —the liability of the master ceases.   This rule, or, more properly speaking, this exception to a well-established rule, is so obviously founded in good sense and justice as to require no citation of authority to support it.   But it sometimes happens, by reason of the many and diversified duties which the servant is required to perform, that it is difficult to determine just when he is, and is not, acting within the scope of his employment.   In such cases the law furnishes a test, the application of which seldom fails to resolve all doubt, and that test is:   Was the act complained of committed by the authority of the master, either expressly conferred or fairly to be implied from the nature of the employment and the duties incident thereto?   In short, was it done in the prosecution of the master's business?   Wood, Mast. & Serv. § 279; Cosgrove v. Ogden, 49 N. Y. 255; Keep v. Walsh, 17 App. Div. 104, 44 N. Y. Supp. 944.

In order that this test may be properly applied to the case in hand, let us briefly advert to some of the salient features which the evidence may be said to fairly and clearly establish.   The defendant was the owner of a three-story building, which it occupied in connection with the tenant, Hutchinson, who carried on a separate business.   Access to the second and third floors of this building was obtained by means of suitable stairs; but, in order to facilitate the removal of the goods and merchandise which were manufactured by the defendant, as well as by Mr. Hutchinson, an elevator had been constructed in one end of the hall, and this elevator, which ran from the basement to the third floor of the building, had attached to it a sign, which read:   "For Freight Only."   The witness Smith was in the employ of the defendant as its packing clerk, and his proper place of business, when in the performance of his duties, was at a table in the shop.   Precisely what his duties were does not appear,

but it may be assumed that their performance required him to make use of the elevator. Indeed, he testified that he was in the habit of operating it; and it appears that, when he or Mr. Hutchinson had occasion to go from one floor to another, they used the elevator for that purpose. It does not appear, however, that Smith had charge of the elevator, or that it was any part of his duty to operate the same for the conveyance of passengers. On the contrary, it does appear affirmatively that he had no authority to use it for any such purpose, and, although he admitted that, on two occasions prior to the accident, he had, in violation of the direction printed upon the sign, carried persons upon the elevator from one part of the building to another, he stated that he did so upon his own responsibility, and without the consent or knowledge of the defendant's officers. In this the witness is corroborated by the evidence of his father, the defendant's secretary, and by Mr. Boswell, its president and treasurer, as well as by Mr. Hutchinson, who, although sworn on behalf. of the plaintiff, testified that he used the elevator for no other purpose than for freight, except to ride upon it occasionally, that he did not allow his employés to ride upon it, and that, if they did so, it was contrary to his instructions. These facts, none of which is seriously controverted by the plaintiff, when subjected to the test to which we have adverted, make it plain, we think, that in conducting the plaintiff to the elevator, with the intention of conveying her thereon to the second floor, Smith not only undertook to do something which he was not employed to do, but that he openly violated the rules and regulations of the business in which he was employed.

It is argued, however, that, even admitting this to be the fact, there was evidence in the case which would justify the jury in finding that in this particular instance Smith was impliedly authorized to use the elevator for the purpose of conveying the plaintiff to the second floor; and this contention is made to rest upon the grounds —First, that the defendant's president and secretary were aware of Smith's intention when he went out of the office, in company with the plaintiff, and raised no objection thereto; and, second, that it had been customary for passengers to use the elevator as a means of conveyance for a long time prior to the accident.

The only evidence to sustain the first of these grounds is furnished by the plaintiff herself, who testified that when she entered the defendant's office, and inquired for the elevator, Mr. Boswell, the defendant's president, was sitting at his desk, four or five feet distant from her, and that further on was another man, whom she assumed to be Mr. Smith, the defendant's secretary. She did not address either of these persons, nor did they speak to her; but she insists that she spoke in a tone of voice sufficiently loud for them to have heard her. These gentlemen, however, testified that they did not hear the plaintiff make any inquiries, nor did they see her until after the accident; and their evidence in this regard was materially strengthened by that of the young man, Smith, who stated that when the plaintiff asked him to show her to the elevator he was not in the office, but in the adjoining shop, or packing room. We are of the opinion, therefore, that the evidence upon this branch of the

case, taken as a whole, is insufficient to establish either knowledge or consent on the part of the defendant.

As regards the question of custom, the plaintiff's case is still weaker. But two witnesses, aside from Mr. Hutchinson and Mr. Smith, testified that they ever rode in the elevator prior to the accident. One of these was a stenographer in the employ of Mr. Hutchinson, who said that she and her co-employés usually went up by the stairway, but that on one occasion she did use the elevator, and her recollection was that she did so by permission of Smith, the packing clerk. The other witness was also an employé, and a sister of Mr. Hutchinson, who testified that she sometimes used the elevator to reach the upper room, that when she did so she operated it herself, and that she was not certain that she ever used it prior to the accident. It is not shown that any of the defendant's officers knew that either of these persons used the elevator in the manner described by them; but, on the contrary, the president and secretary both swore unequivocally that they did not, and that it was never used, to their knowledge, by any person other than an employé, as a means of conveyance. Giving to this evidence, therefore, all the effect which can possibly be claimed for it, it simply proves that in one or two isolated instances there was a departure from the prescribed order of business in the defendant's establishment, but that the same was never brought to the attention or knowledge of the defendant's officers. This certainly does not go far towards establishing a custom, if, indeed, it can be said to have any tendency in that direction; for, in order to charge the master with liability for the unauthorized acts of his servant, it must be shown that he either had actual notice of such acts, or else that they were committed so frequently and under such circumstances as to justify the presumption of notice.

In our view of the case, no error was committed by the trial court in granting a new trial, and, consequently, the order appealed from should be affirmed.

Order affirmed, with costs. All concur.