WILLIAM P. MARONEY vs. OLD COLONY & NEWPORT RAIL-
WAY COMPANY.

A rule of a railroad corporation, restricting to special trains the holders of a class of tickets
which nevertheless purport to entitle them to passage on any regular train, does not war-
rant the exclusion from a regular train of the holder of such a ticket taking passage
thereon by virtue of it without notice of the rule.

On the issue whether the buyer of a ticket for his transportation over a railroad had notice
of a rule of the railroad corporation, restricting holders of such tickets to passage on
special trains, before he undertook to pass by it on a regular train, evidence is admissible
that at the time of buying it he inquired of the seller whether he could pass on that
train by it, and was answered that he could; although the seller was not an agent of the
corporation.

TORT. The declaration alleged " that the defendant corpora-
tion is the owner of a certain railroad, extending from Middle-
borough in Massachusetts to Newport in Rhode Island, and on
July 11, 1868, and for a long time previously, was accustomed to
carry and convey in its cars and over its said road passengers for
hire ; that on said July 11 the plaintiff, having purchased of one
of the defendants' authorized agents a ticket entitling him to a
passage in their cars over said road from said Middleborough to
said Newport, entered said cars with said ticket, and was right-
fully, peaceably and lawfully riding and being conveyed from
said Middleborough to said Newport ; that, while so riding and
being conveyed, at or near Tiverton in Rhode Island, and having
with him said ticket which he had then and there exhibited
to the conductor of the train of cars in which he was riding,
the defendant corporation, by its said conductor and agent, as-
saulted the plaintiff, and wrongfully, and without any just or
lawful cause, with great force and violence, pulled and dragged
the plaintiff and forced and ejected him from said cars, and
caused him to be there detained for the space of eight hours,
whereby the plaintiff was then and there greatly exposed and
injured in his credit, and suffered much pain of body and mind,
and was subjected to great loss in his business," &c.

The defendants, in their answer, admitted that they were a
corporation, owning and operating a railroad from Middleborough

to Newport, but denied all the other allegations of the declaration, and alleged "that, if the plaintiff purchased a ticket as alleged, the said ticket was for a continuous passage from Sandwich in Massachusetts to New York, and was purchased by him subject to the established rules of the defendants, which rules the defendants were authorized to make, and of which the plaintiff was informed, to wit, that the holder of said ticket would only be carried from Middleborough to Newport in trains connecting with steamboats for New York; that said ticket was sold at a less price than tickets allowing the holders to stop at intermediate points on the defendants' railroad, or at said Newport; that the plaintiff, in violation of said rules, attempted to ride on other trains over the defendants' railroad, not connecting with said steamboats, and to stop at intermediate points on said railroad, namely, at Fall River and Newport; and that, if the plaintiff was required, at the time and place alleged, or at any time and place, to leave the defendants' cars, then that the plaintiff refused to pay the established fare over the defendants' railroad, when the same was properly demanded, and that the defendants were justified in law in requiring the plaintiff so to leave said cars, the defendants expressly denying the use of any unlawful or unnecessary force therein."

Trial in the superior court, before *Rockwell*, J., who allowed a bill of exceptions, which referred to the pleadings and continued as follows: "It was in evidence at the trial, that the plaintiff, on July 11, 1868, purchased of the ticket-seller of the Cape Cod Railroad Company, at Sandwich in Massachusetts, a ticket for New York, in the form known as a coupon-ticket, the first part of which was for a passage from Sandwich to Middleborough, and the remaining portion in the following form:

| Issued by Cape Cod Railroad. | Sandwich. | Present this at office for a Berth. | NEWPORT TO NEW YORK. E. N. Winslow, Sup't Cape Cod R. R. | Sandwich. |
|---|---|---|---|---|
| MIDDLEBOROUGH TO NEWPORT. | | | | |

" It was also in evidence, that he took the morning train on the Cape Cod Railroad, giving the conductor for his passage the first part of the ticket, and arrived at Middleborough, the point of junction with the old line of the Old Colony & Newport Railroad, about nine o'clock, and there entered a train of the defendants' cars, and was carried to Fall River, the conductor of this train, to whom he presented this ticket, punching the same, and allowing him to pass thereon ; that at Fall River, after a short delay, he entered another train of the defendants' cars, being the morning train from Boston to Newport, which came to Fall River by way of Taunton, and not by way of Middleborough ; and that between Fall River and Tiverton, being called upon for his fare by the conductor of the last named train, he presented the ticket, and was informed by the conductor that by the rules of the defendants it was good only on the steamboat trains, or trains connecting with the steamboats, of which two were run in the afternoon, and that he must pay the difference in fare (about sixty cents) or leave the train at Tiverton, the next station, and wait for the steamboat train, which passed in the afternoon ; that the plaintiff refused to make any further payment, claiming that on said ticket he was entitled to ride to Newport on said train, pass a part of the day in Newport, and then take the steamboat in the .evening for New York ; that at Tiverton he was removed, or required to leave the train, by the conductor ; and that he subsequently jumped upon the train, rode to the next station, Bristol Ferry, there left the train, and some six or seven hours later took the steamboat train at Bristol Ferry, and reached Newport before the departure of the steamboat for New York ; that the fare at this time, by reason of competition with other lines, was less from Sand wich to New York than the fare from Sandwich to Newport, of which the plaintiff was informed ; that the tickets in the form above described were prepared and issued by the Cape Cod Rail road Company, and had been sold for some months prior to July 11, 1868, by said company, with the assent of the defendants, but the Cape Cod Railroad Company claimed no other right to make contracts for conveyance of passengers over the defendants' railroad ; and that of the amount received for such tickets the Cape

Cod Railroad Company retained the local fare on its own road, and paid the defendants the amount of the fare from Middleborough to New York, and the ticket-seller at Sandwich was appointed by, accounted to, and received all instructions from said Cape Cod Railroad Company.

" The defendants offered evidence, which was uncontradicted, that by their rules passengers holding tickets to New York were restricted to the steamboat trains; that two steamboat trains were run each afternoon, to one of which cars passing through Middleborough were attached, and stopped at Tiverton; and that the morning train from Boston to Newport was not one of said steamboat trains.

" The plaintiff offered in evidence a conversation between himself and the ticket-seller at Sandwich, to the admission of which the defendants objected upon the ground that it did not appear that the ticket-seller was their agent. The testimony was admitted as follows, namely: The plaintiff asked Achilles Atkins, the ticket-seller, if he could go to Newport on the morning train on that ticket; and he said, Yes. The evidence was conflicting, whether or not the plaintiff was informed of the defendants' rule before purchasing his ticket.

" The defendants requested the judge to instruct the jury as follows: 1. If the jury find that the plaintiff purchased at Sandwich, on the Cape Cod Railroad, a through ticket for New York, in part over the defendants' railroad, such ticket would not entitle the plaintiff to ride in any local train or trains on the defendants' railroad between Middleborough and Newport which the plaintiff might select; but the defendants could designate the time and mode of conveyance on their railroad, provided that the plaintiff was carried, or allowed to go, by the earliest through passenger conveyance, and by direct line to New York; and such ticket would not entitle the plaintiff to break his journey by stopping at one or more points on the defendants' railroad.

" 2. The plaintiff, buying a through ticket to New York over the defendants' line of railroad and steamboats connecting therewith, must take the mode of conveyance over the defendants' line provided by their rules and regulations, provided he shall be car-

ried or allowed to go by a direct and the earliest through passenger conveyance.

" 3. It was competent for the defendants to make rules and regulations to prevent passengers on through tickets from Middleborough to New York, over the defendants' line, from stopping at intermediate points on their railroad, or at Newport ; and it is immaterial whether the plaintiff, before purchasing such through ticket, was informed or not of such rules and regulations.

" 4. If the defendants ran a through passenger car or train, with proper accommodations from Middleborough to Newport, connecting there with the earliest steamboat leaving for New York, they might lawfully restrict all through passengers from Middleborough to New York to such car or train, and might lawfully prevent such through passengers from taking other trains.

" 5. If there was a difference in the fare between a through conveyance from Middleborough to New York, and a conveyance allowing stops at intermediate points of the journey, the plaintiff, who selected a through conveyance as the cheaper, has no cause of action against the defendants, if prevented by them from stopping and breaking his journey at any intermediate point.

" 6. The Cape Cod Railroad Company, if authorized by custom or contract to sell tickets over the defendants' railroad, would not be authorized thereby to make special contracts for the conveyance of passengers over the defendants' railroad in contravention of the rules and regulations of the defendants, but only in the usual and regular way ; and would not be authorized thereby to contract with passengers on through tickets, permitting them to stop or break their journey at intermediate points.

" 7. It would not be within the scope of the authority of a ticket-seller appointed by the Cape Cod Railroad Company, authorized by said company to sell tickets over the defendants' railroad, under such custom or contract to make representations binding upon the defendants as to what would or would not be allowed the passenger holding such ticket to do upon the defendants' railroad. He could only sell such tickets subject to the lawful rules and regulations of the defendants.

" 8. There is no evidence from which the jury can lawfully infer that the ticket-seller upon the Cape Cod Railroad was an agent of the defendants, authorized to make contracts for the conveyance of passengers over the defendants' railroad, other than by the sale of tickets in the usual way and form, or to make representations as to the trains by which the defendants would carry said passengers ; and such contracts and representations, if made, would be binding only on said Cape Cod Railroad Company.

" 9. If the jury shall find that, under the terms of connection subsisting, either by express or implied contract, between the Cape Cod Railroad Company and the defendants, said Cape Cod Railroad Company had no right to sell through tickets, or make contracts for conveyance of passengers, allowing the passenger to break his journey or stop on the way, before reaching his destination, the plaintiff's remedy for a breach of such representation or contract, or any injury resulting therefrom, would be against the Cape Cod Railroad Company, and not against the defendants.

" These instructions the judge declined to give in the form requested, but did instruct the jury substantially as follows : That the plaintiff, holding a ticket in the above form, purchased by him of the ticket-seller at Sandwich, upon which no condition appeared, was entitled to ride thereon upon the defendants' regular train that morning from Middleborough to Fall River, and from Fall River he was entitled to ride in the next regular train of the defendants from that place to Newport ; that the rule alleged to have been made by the defendants was a rule the defendants had a right to make and enforce, and the plaintiff would be bound thereby if he had knowledge thereof ; that if the plaintiff at any time before entering the defendants' cars at Middleborough had knowledge of said rule, he was not entitled to ride from Middleborough to Fall River on said ticket in any but the steamboat trains ; and that if at any time before entering the defendants' cars at Fall River the plaintiff had knowledge of said rule, he was not entitled to ride on said ticket from Fall River to Newport in any but the steamboat trains, and if he attempted so to do, the defendants might lawfully, using no unnecessary force, remove him from any other train ; but that, if the jury should

find that the plaintiff had not such knowledge before entering the train from Fall River to Newport, and no reasonable means of knowledge, then he was entitled to ride upon said ticket to Newport; that this question of knowledge was the main question for the jury to decide; that, upon this question of the plaintiff's knowledge of the defendants' rule, his conversation with Atkins, the ticket-seller, was competent testimony, and to be considered by the jury; but that, upon the evidence, Atkins was not the defendants' agent, and had no power to make contracts binding upon the defendants, and for this purpose alone, namely, as tend-ing to show whether or not the plaintiff had such knowledge, the evidence of the conversation was admitted, and ruled out for all other purposes.

" The jury found for the plaintiff, with damages in the sum of $563; and to the foregoing rulings and refusals to rule the de-fendants allege exceptions."

*C. F. Choate*, for the defendants.    1. The chief point in which the instructions given to the jury differ from those asked for by the defendants consists in this, that they were instructed that the plaintiff was not affected by a reasonable regulation of the defend-ants unless he had knowledge of it before entering the cars at Fall River.    The qualification was erroneous.    If the regulation was reasonable, the plaintiff, whenever informed, was bound to observe it.    He suffered no detriment by failing to learn it before he entered the cars at Fall River.    Had he learned it before he entered those cars, he might have waited for the steamboat train, or have paid additional fare, at his option.    When informed, he had the same option, and had no longer a right to ride in the train without paying the established fare.    *State* v. *Overton*, 4 Zabr. 435.    *Cheney* v. *Boston & Maine Railroad*, 11 Met. 121.

2. The conversation with Atkins was improperly admitted. Although the whole testimony is not reported, it is clear, from the ruling of the court upon the whole evidence, that Atkins was not the defendants' agent.    The plaintiff's testimony of his con-versation with a third person, in no way connected with the de-fendants, had no tendency to prove his knowledge, or want of knowledge, as to the subject matter of the conversation.

*A. Jones,* for the plaintiff.

WELLS, J. The plaintiff's ticket entitled him to a passage upon any regular train for passengers upon the road of the defendants. It contained no notice of any restriction or limitation of the right which it purported to give. It was issued by the ticket agent of the Cape Cod Railroad Company, whose authority for that purpose was sufficiently shown by the fact that such tickets had been so issued by said company " for some months prior " thereto, " with the assent of the defendants." The defendants could not, by any rule or regulation not previously made known, restrict the plaintiff from taking the passage to which his ticket entitled him, in any regular train for the accommodation of passengers. Under the instructions, the jury must have found that there was no such information to the plaintiff personally ; and the case shows no such publication of the rule as would affect him with notice thereof.

The evidence of the inquiry made by the plaintiff of the person from whom he purchased his ticket, " if he could go to Newport on the morning train on that ticket," and the answer that he could do so, was restricted explicitly by the judge at the trial, to the question whether the plaintiff had previous knowledge of the rule in question.

We think that the defendants show no good ground of exception to the ruling or the instructions to the jury in the court below. *Exceptions overruled.*