JAMES E. HAMEL, Respondent, *v.* THE BROOKLYN AND NEW YORK FERRY COMPANY COMPANY, Appellant.

*N. Y. Supreme Court, Second Department, General Term, June* 28, 1889.

*Master and servant. Former's liability for wilful acts of the latter.*—A master is liable for an assault and false imprisonment caused by his servant, who, while acting within the general scope of his duty, and assuming to act under his master's authority, calls in a police officer, and has a party wrongfully arrested, though the acts were not authorized by the master.

See Note at the end of this case.

Action brought to recover for an alleged assault and battery, false imprisonment and malicious prosecution.

Plaintiff and a companion after paying their fare attempted to pass through defendant's ferry gate leading from the passenger entrance to the bridge and ferry boat, but an employee of defendant, who was in charge of the gate, was in the act of closing it, as the whistle had given warning that the ferry-boat was about to start. A quarrel arose between them and plaintiff claimed that the gate-keeper assaulted and beat him. During the altercation plaintiff was arrested by a policeman, and temporarily imprisoned, but whether it was done at the instance of the gate-keeper or on the officer's own motion, was a disputed question on the trial. The gate-keeper was the principal witness on the trial, and defendant's superintendent also testified. The plaintiff was discharged.

The defendant's counsel in this action requests the court to charge as follows:

*First.*—" That it was established by the evidence that the defendant did not authorize or direct, in any way, the arrest or prosecution."

*Second.*—" That there is no evidence that the defendant

authorized, directed or caused the arrest or prosecution of the plaintiff, as alleged in the complaint in this action."

*Third.*—" The jury are not at liberty to infer from the mere arrest and prosecution of the plaintiff, and the surrounding circumstances that the defendant instructed or authorized them."

The court decline to charge these requests except as included in the general charge.

The plaintiff had a verdict for $500.

Appeal from a judgment entered upon a verdict, and from an order denying a motion for a new trial.

*James & Thomas H. Troy*, for appellant.

*A. W. Gleason*, for respondent.

PRATT, J.—The testimony was conflicting, and the questions of facts were properly submitted to the jury.

There is no such preponderance of evidence as to justify interfering with the verdict.

The exceptions to defendants' requests to charge, cannot be sustained. The gateman was an employee of defendant, and it was correctly charged that if he assaulted the plaintiff, and, assuming to act under the authority of defendants and as a part of that transaction, called in a police officer and had plaintiff arrested, the defendants were liable.

Whether defendants authorized the arrest or prosecution was not important. If their employee, acting within the general scope of his duty, unjustifiably caused them, defendants must respond. There was evidence enough on that point to go to the jury. We think the court correctly laid down the law.

Judgment affirmed, with costs.

All concur.

NOTE ON THE LIABILITY OF AN OWNER OR EMPLOYER TO PERSONS ON HIS PREMISES BY HIS PERMISSION OR INVITATION FOR INJURIES DONE BY THE WILLFUL ACTS OF HIS SERVANTS OR AGENTS.

This note will be limited to willful acts, and will not include negligence. It will also refer to such injuries only, as happen to persons who are rightfully on the owner's premises by permission or invitation, and not to such as trespassers receive at the hands of his agent or employee.

The invitation in such cases is usually implied from the surrounding facts and circumstances, and is seldom expressly given.

*What constitutes invitation.*—The stoppage of a railroad train at a regular station is an invitation to the public to take passage thereon. Werle *v.* The Long Island R. R. Co., 98 N. Y. 650.

An open gate at an elevated railway station is in the nature of an invitation to passengers to take the train by that avenue. Fisher *v.* Metropolitan El. R. Co., 34 Hun, 433.

A manufacturing corporation, by erecting upon its own tract of land, factories and tenements for its employees, thereby confers upon third persons a license to use the streets laid out through its land. People *v.* Moore, 50 Hun, 356.

The acquiescence of a railroad company, for a period of more than thirty years, in the crossing of its tracks by pedestrians, amounts to a license and permission to all persons to cross its tracks at such point. Barry *v.* N. Y. C. & H. R.R. R. Co., 92 N.Y. 289.

A person who goes upon another's land to seek employment, is on the premises at most by the mere implied sufferance or license of the owner, and not on his express or implied invitation. Larmore *v.* Crown Point Iron Co., 101 N. Y. 391.

*Authority.*—Before a person is held responsible for the wrongful acts of another as a servant in the line of his employment, there must be proof that the latter was in fact such servant. Walker *v.* Wilson, 49 Hun, 609.

So to render a corporation liable, the law requires that the relation of principal and agent, or master and servant, shall appear to exist between the person whose willful act is complained of and the corporation. Fisher *v.* Met. E. L. R. Co., 34 Hun, 433. But when this relation is established, even though the act may be willful and malicious on the part of the servant, as long as it is performed in the course of his employment, the master or employer will be held legally liable to make compensation to the party injured by it. Fisher *v.* Met. E. L. R. Co., *ante;* although without orders. Murphy *v.* Central Park, etc., R. R. Co., 48 Supr. 96.

Usually the authority is conferred without special limitation, and in

such case the servant has, by implication, power to do everything necessary to the proper execution of such authority. But at times he must exercise discretion, and at other times he may use force; and when either is so exercised or used, the act becomes that of the master; it is done for him in the usual course of his business, and so the law works out his assent thereto. Day *v.* Brooklyn City R. R. Co., 12 Hun, 435.

*Liable when in the course of the employment.*—If the servant is acting in his master's business and within the scope of his employment as a servant, at the time he commits an unprovoked and outrageous assault, the master must be deemed responsible, although the conduct of the servant amounts to a willful wrong on his part. Meehan *v.* Morewood, 52 Hun, 566; Mott *v.* Consumers Ice Co., 73 N. Y. 543; Quinn *v.* Powers, 87 Id. 537. In this class of cases the question is, whether the wrongful act is in the course of the employment or outside of it and to accomplish a purpose foreign to it. Meehan *v* Morewood, *ante;* Ochsenbein *v.* Shapley, 85 N.Y. 214, 220.

But he is not liable for such of his acts as are committed clearly outside of such employment and authority. Id. Isaacs *v.* Third Ave. R. R. Co., 47 N. Y. 122; Mott *v.* Consumers, Ice Co., 73 Id. 543; Hughes *v.* N. Y. & W. H. R. R. Co., 36 Supr. 222.

But in all cases where the master owes no duty to the person assaulted, the inquiry is, whether the wrongful act is in the course of the employment, or outside of it and to accomplish a purpose foreign to it. Meehan *v.* Morewood, *ante* ; Ochsenbein *v.* Shapley, *ante.* If the object sought to be accomplished by the servant is wholly disconnected from his employment, and the act is not done in the prosecution of the business which the master employed him to do, the master is not liable. Id. ; Cosgrove *v.* Ogden, 49 N. Y. 255. In Meehan *v.* Morewood, *ante,* the plaintiff went with a truck, by defendant's direction, to obtain some chests of tea at defendant's storehouse, where he found the defendant's foreman, who, on plaintiff's refusing to accept some of the tea, kicked and shoved him him into the street; and the court held, in an action against the master for such assault, that the acts of the foreman were not within the scope of his employment, and did not render the defendants responsible therefor, and that the trial court properly dismissed the complaint, and limited the effect of the decision in Hoffman *v.* N. Y. C. & H. R. R. R. Co., 14 J. & S. 526, 529, that it is always a question for the jury whether the act of a servant is done in pursuance of his employment, or wickedly and maliciously, to cases in which the wrongful act is not entirely inconsistent with the nature of the servant's employment.

Where a servant acts within the scope or limits of his authority,

designing to discharge the duty owed by him to his employer, and he acts erroneously, or in a case where the authority cannot, under the circumstances, be lawfully exercised, the employer must bear the responsibility. Rounds *v.* Christopher, etc., R. R. Co., 34 Hun, 471. In this case, defendant's driver, on a dispute arising between him and plaintiff, who was a passenger, as to whether plaintiff had paid his fare, called a policeman and, on plaintiff's resisting his efforts to remove him, caused his arrest and detention in the station house. The defendant attempted to justify such removal, arrest and detention under section 1, chap. 189, Laws of 1880, which, in case the plaintiff had conducted himself in a disorderly manner, would have authorized the acts of defendant's driver and the policeman, but the jury on the trial found in plaintiff's favor upon the question of payment of fare and disorderly conduct. The fact that the driver made use of the authority, when the circumstances did not warrant it, does not relieve the defendant from liability for the act, and it is equally as liable for the consequences of the arrest and imprisonment, as it is for the assault made by the driver upon the plaintiff in the effort to remove him. Id.

*Arrest.*—And in Hamel *v.* Brooklyn and N. Y. Ferry Co., above reported, the defendant was held liable for the unjustifiable acts of its gatekeeper while acting within the general scope of his duty, in assaulting plaintiff and causing his arrest, though it had not authorized such arrest.

Though a passenger has no right to ride in a car without payment of his fare, and if he refuses to pay, the company is not bound to carry him, and may at a proper place and in a proper manner remove him from the car, it cannot imprison him in a car until he pays his fare, in order to compel payment. Lynch *v.* Metropolitan El. R. Co., 90 N. Y. 77. In this case, plaintiff purchased a ticket but lost it, and on attempting to pass through the gate from the station platform, was prevented, though he stated his purchase and loss of ticket, by the gate-keeper who, under his orders not to let passengers pass out until they either paid their fares or showed tickets, sent for a police officer and caused plaintiff's arrest and detention all night in the police station. In an action for false imprisonment, the railway company was held responsible for the acts of its gate-keeper.

But a master is not responsible for the willful injury committed by the servant while engaged in the transaction of his business, unless such injury results from the business transacted by the servant for his master. Mali *v.* Lord, 39 N. Y. 381. In this case, the superintendent and one of the clerks called a policeman into the store of their employer, and, without the knowledge or the express or implied authority of the owner, directed him to arrest a lady suspected of stealing goods, and to examine her person. The proprietor, in an action against him, for an illegal arrest and imprisonment, was held not liable. The de-

cision was based upon the ground that a master, by intrusting his servant with his property, and conferring power upon him to transact his business, does not thereby authorize him to do any act for its protection that he cannot lawfully do himself, if present; that the master would not, if present, be justified in arresting, detaining and searching a person upon suspicion, however strong, of having stolen his goods, and secreting them upon his person; and that the act was not, therefore, done in the business of the employer, and he was not, as master, responsible therefore.

This principle was followed in Mallack *v.* Ridley, 43 Hun, 336; 18 W. Dig. 16, on its first appearance at general term, upon nearly similar facts. The defendant's floor-walker called in a policeman and informed him that a salesman had seen the plaintiff take and conceal a corset, and the policeman followed, arrested and took her back to the store for examination. The court reiterated the rule laid down in Mali *v.* Lord, *ante*, and further held that the master's liability does not depend upon the supposition of the servant as to the extent of his authority, but rather upon the authority actually or impliedly conferred.

When this case came before the general term a second time, 43 Hun, 640, the court held that evidence going to prove that the person by whom plaintiff was arrested was a floor-walker, showing in customers, directing saleswomen and looking out for thieves and pickpockets, etc., is sufficient to go to the jury as to whether the performance of those duties did not imply instructions to detain suspected persons, and the case was reversed for a refusal to submit this question to the jury.

On its next appearance at general term, 47 Hun, 638; 24 Abb. N. C. 172, the jury found, upon a conflict of testimony, that the floor-walker had the right to arrest and apprehend thieves, and the court held that if he apprehended, under that authority, an innocent person, his employers are necessarily responsible.

But the court also placed its decision upon the principle which governs in similar cases relating to common carriers. The rule, so long held by the courts, that a carrier was not responsible for a willful assault by one of its employees upon a passenger, has been abrogated upon the theory that it invites the passenger to subject himself to the protection and care of its employees, and under these circumstances, it should be responsible for all the acts of its subordinates toward the passenger while under its custody and control. So the storekeeper invites the public to enter his premises and subject themselves to the custody and control of his subordinates, and by parity of reasoning he should be held responsible for the brutalities of such subordinates, even where they are not committed within the strict line of his employment. And there is no reason why this principle

should not generally appertain in all cases where a person is rightfully upon the master's premises through his express or implied invitation.

In Geraty *v.* Stern, 30 Hun, 426, plaintiff went to the defendant's store in New York city to purchase an ulster for herself, and after she had examined one and had it on her person preparatory to its purchase, a floor-walker in defendant's employ approached and told her that she did not want to purchase, but was a spy from a rival house, and ordered the cloak to be taken from off her, which was done. The employees were instructed not to show styles or give prices to persons who came from other stores to look at styles or obtain prices. In such case, as the defendants devolved on their employees the duty of carrying out such instructions, they must be held responsible for the manner in which it is done. No other rule will meet the requirements of public policy or public convenience.

In Moses *v.* Bates, N. Y. Daily Reg., June 17, 1884, a credit clerk of defendant obtained a warrant for the arrest of one of defendant's customers, without malice or knowledge of the prosecution on defendant's part, and it was held that he was not liable for the willful acts of his servant.

Where the plaintiff, a ticket-taker, is wrongfully arrested and detained by the manager of Glen Island and a policeman in the employ of the owner, on a charge of larceny, in stealing tickets, an action will lie against such owner for such an arrest. Clark *v.* Starin, 47 Hun, 345. In such case, the question is not whether the particular act was authorized, but whether the servant was engaged in his master's business and acting within the general scope of his authority. The test is whether the act complained of is in the course of the employment or outside of it. In Clark *v.* Starin, *ante*, a general authority to do all necessary police acts had been confided to the manager and the policeman, and if through lack of judgment or discretion, or even infirmity of temper, they went beyond the strict line of authority, the master is liable.

Though a passenger has no right to ride in a car without payment of his fare, and, if he refuses to pay, the railroad company is not bound to carry him, and may at a suitable place and in a proper manner, remove him from the car, yet it cannot imprison him in a car, or elsewhere, until he pays his fare, for the purpose of compelling payment. Lynch *v.* Metropolitan El. R. Co., 90 N. Y. 77.

A railroad company is liable to the same extent as an individual for any injury done to a passenger by a person, in the course of his employment, who is in the service of the company. Corbett *v.* 23rd St. Ry. Co., 42 Hun, 587; Higgins *v.* N. Y. & R. Co., 46 N. Y. 23; Hoffman *v.* N. Y. C. R. R. Co. 87 Id. 25; Flynn *v.* H. R. R. Co., 49 Supr. 81; Stewart *v.* Brooklyn & Crosstown R. R. Co., 90 N. Y. 588.

## Note on the Liability of an Owner or Employer for Injuries.

This liability will include the entire injury and indignity to which the plaintiff is subjected not only by his removal from the car, but also by his subsequent imprisonment and detention in the station-house. Corbett *v.* 23rd St. R. R. Co., *ante;* Rounds *v.* Christopher, etc., R. R. Co., 34 Hun, 471.

In McKernan *v.* Manhattan Ry. Co., 54 Super. Ct. 354, an intending passenger to whom the sale of a ticket is refused, was held to be lawfully upon the station, but with the duty of leaving it with reasonable promptness, and that, in case of his refusal to leave, the company has the right to use such force, if legal, as would be necessary to enforce compliance with the request; and that where an agent, who is employed to enforce this right, does so in such manner as to unnecessarily injure such party, the company is liable for the injury. In this case the ticket-seller assaulted the intending passenger to whom he refused the sale of a ticket, by throwing him downstairs, and it was held that whether he acted within the scope of his employment in making such assault was a question for the jury.

The master is responsible for an injury occasioned by the unlawful act of his servant, done under a mistake of facts, or a mistake of judgment upon the facts, if in the course of his master's business. Higgins *v.* Watervliet Turn. Co., 46 N. Y. 23. His liability for the tort of his servant does not depend upon the existence of an authority to do the particular act from which the injury resulted. In most cases where the master has been held liable, not only was there an absence of authority to commit the wrong, but it was committed in violation of the duty which the servant owed to the master. Id. Whether the injury to third persons is caused by the negligence or positive misfeasance of the agent, the *maxim respondeat* superior applies, provided only that the agent was acting at the time for the principal, and within the scope of the business intrusted to him. Id.

The ejection of a person who has paid his fare, from a street car, by the driver is unjustifiable, where the only charge made is on the ground of non-payment of fare; and the company is liable for the assault of its driver. White *v.* Twenty-third St. R. R. Co., 20 W. Dig. 510; Stewart *v.* Brooklyn & Crosstown R. R. Co., 90 N. Y. 588. It is also liable for an arrest, under such circumstances, if it is ordered by the driver, and afterward ratified by its inspector. White *v.* Twenty-third St. R. R. Co., *ante.*

*Carrier.*—A common carrier, by its contract with a passenger, undertakes to carry him safely and treat him respectfully; and, while it does not undertake to protect from every possible danger, it does undertake to protect him against any injury arising from the willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger. Stewart *v.* Brooklyn and Crosstown R.

R. Co., *ante;* Commonwealth *v.* Powers, 7 Metc. 596; P. F. W. & C. Ry. Co. *v.* Hinds, 53 Penn. St. 512; Goddard *v.* Grand Trunk Ry., 57 Me. 213; 2 Am. Rep. 39; Flint *v.* N. & N. Y. Transp. Co., 34 Conn. 554. Where the driver, who also acted as conductor, of a street car unjustifiably attacked and beat a passenger, the company was held liable under its contract of carriage. Steward *v.* B. & C. R. R. Co., *ante.*

In Goddard *v.* The Grand Trunk Ry., *ante,* it was held that a passenger who was assaulted and grossly insulted in a railway car by a brakeman employed on the train has a remedy therefor against the company.

So, in Craker *v.* Chicago and Northwestern Ry. Co., 36 Wis. 657; 17 Am. Rep. 504, it was held that a railroad company was bound to protect a female passenger on its train from indecent approach or assault; and, where a conductor on the company's train makes such an assault on a female passenger, the company is liable for compensatory damages, also see Bryant *v.* Rich, 106 Mass. 180; 8 Am. Rep. 311; Sherly *v.* Billings, 8 Bush. 147; 8 Am. Rep. 451; Chicago and Eastern Ill. R. R. Co. *v.* Flexman, 103 Ill. 546; A. L. J. Nov. 25, 1882, p. 434.

In all such cases, passengers, for a violation of their rights, have their remedy by action on the contract of carriage. Stewart *v.* B. & C. R. R. Co., *ante.*

The mind of the court, in Isaacs *v.* The Third Ave. R. R. Co., *ante;* 7 Am. Rep., 418, was not called to the fact that the rule of the master's liability for the assault of a servant committed upon a person to whom the master owes no duty, does not apply to the case of an assault committed upon a passenger by a servant intrusted with the execution of a contract of a common carrier.

The court of appeals in Pease *v.* D., L. & W. R. R. Co., 101 N. Y. 367, 371, states to some extent the correlative rights and duties of company and passenger as to the grounds of reception and rejection substantially as follows:

"A carrier of passengers is not required unconditionally to accept all persons who offer themselves for transportation, and tender fare. It may lawfully decline to receive or carry those who refuse, after knowledge of the same, to conform to the reasonable rules of the company, or to pay their fare, or purchase tickets before entering the cars, and may lawfully eject from the train persons committing these offenses.

"A passenger who resists a lawful requirement of the company, to the extent of provoking a breach of the peace, and the exhibition of violence in the presence of other passengers, cannot, as matter of law, demand a passage upon the train where such an exhibition has been made.

"A railroad company has the right, and it is its duty, to enforce order in its cars, and to eject therefrom those who, by indecent or ob-

scene language, or by violent and boisterous behavior, cause danger, discomfort or annoyance to any other passengers; in the exercise of this right, the officers of the company must determine as to the propriety of their action, being responsible for the reasonable exercise of their discretion."

For violations of their rights, passengers have their remedy by action on the contract of carriage. Stewart *v.* Brooklyn & Crosstown R. R. Co., *ante.*

It matters not that the servant exceeds the powers conferred upon him, and does an act which even his master is not authorized to do, so long as he acts in the line of his duty or, while engaged in the service of his master, attempts to perform a duty pertaining, or which he believes to pertain, to that service. Lynch *v.* Metropolitan El. R. Co., *ante.*

In case the master owes no duty to third persons, in order to charge him for the wrongful acts of his servant, they must have been committed by his express authority or in his service, and within the scope of the servant's employment and authority. Isaacs *v.* Third Ave. R. R. Co., *ante.* In such case the master is liable to third persons for any abuse of the authority conferred, or injuries resulting from any error of judgment or mistake of facts by the servant, as well as for those resulting from a negligent or reckless performance of his duties. Ib.

Though the act of the servant is flagrant, reckless and illegal, still, if it is within the scope of his authority and employment, and his authority is not used merely for an independent and wrongful purpose of his own, the employer is liable therefor, Flynn *v.* Central Park, etc., R. R. Co., 49 Supr. 81; but, if from malice and in order to effect some purpose of his own foreign to the employment, he wantonly commits an assault upon or causes damage to another, the master is not liable for it. Ib.

A company is liable for any force used upon the person of a passenger in an attempt to execute its orders by a conductor who has been instructed by the company to demand of every passenger a certain fare, and to remove from the car any one refusing to pay the same, in case the company has no right to demand the required fare; and if it has a right to the fare, and the conductor, acting in the performance of his duty, exceeds, through zeal or impetuosity of temper, the degree of force necessary and proper to accomplish the removal, and damage ensue, the company is also liable. Jackson *v.* Second Ave. R. R. Co., 47 N. Y. 274.

The master need not expressly authorize the particular act and conduct of the servant which occasions the wrongful act; and in most cases where he has been held liable for the tortious act of his servant, the latter has acted, not only without express authority to do the

wrong, but in violation of his duty to his master. Rounds *v.* D. L. & W. R. R. Co., *ante.*

If an act is within the scope of the servant's employment and authority, though flagrant, reckless and illegal, and the servant in doing the act undertakes to act for the company, and not for himself or for his own ends, the company is not exonerated, although the servant may have deviated from instructions in executing the authority, or may have acted without judgment, or even brutally. Hoffman *v.* N. Y. C. &. H. R. R. R. Co., *ante.*

Where the cars on a street railroad stop at localities on their route, and obstruct a free passage across the street, a person who desires to cross has an undoubted right to cross over the platform of the car, while thus interfering with his passage, for the purpose of getting beyond it, and in so doing is not a trespasser or wrongdoer; and, in case the driver, in carrying out the rule forbidding persons from being on the platform, should forcibly seize and throw him from the car, the company is answerable. Shea *v.* Sixth Ave. R. R. Co., 62 N.Y. 180.

A person who in an orderly way attempts to enter a street car, as a passenger, is not to be regarded a trespasser prior to the payment of the required fare to the conductor. But if he refuses, upon request, to pay the fare, he becomes a trespasser and may be ejected in a proper manner. And he may be so treated for improper conduct, by which he forfeits his right to remain in the car. Butler *v.* G. F. S. H. & F. E. St. R. Co., 49 Hun, 610.

Railroad employees cannot eject from the company's cars a passenger of good character, who has paid his fare and is in the rightful possession of a passenger ticket entitling him to a ride on that train, in the absence of any present or threatened misconduct, which, makes his presence upon the cars offensive to the other passengers, or in any way endangers the good order or safety of the train. Hoerstel *v.* N. Y. &. H. R. R. Co., 1 City. Ct. R. 134.

And where the necessity or occasion for putting a passenger off a train was the omission of duty on the part of the company, and the act is the act of the company's servants, his ejection is a violation of his rights for which the company is liable. Martin *v.* N. Y. C. & H. R. R. R. Co., Supr. Ct. Buff., June 16, 1886. He is entitled under such circumstances to be treated with consideration and patience and to receive a complete explanation; and if after such explanation, he, or any one for him, offers to pay his fare, the conductor is bound to accept it and cannot summarily eject him. Id.

The company is so far responsible for the acts of its agent in demanding fare without right and removing a passenger for not paying it, that it will be liable for any force used by its agent upon the person of such passenger, though confined strictly to the necessary

Note on the Liability of an Owner or Employer for Injuries.

amount and employed solely for that purpose and with that intent. Jackson *v.* Second Ave. R. R. Co., *ante.* But where the agent exceeds, through zeal or impetuosity of temper, the degree of force necessary and proper to accomplish this purpose, and injury ensues, the company is not called upon to respond in damages. Id.

So also for the wilful, wanton or reckless acts of the servant, not committed in the service of the master and not within the line of his duty or the scope of his employment, the master is not liable. Isaacs *v.* Third Ave. R. R. Co., *ante.* This principle does not apply to the case of an assault committed upon a passenger by a servant intrusted with the execution of a contract of a common carrier. Stewart *v.* Brooklyn and Crosstown R. R. Co., *ante.*

It was formerly held that a common carrier was not responsible for a wilful assault by one of its employees upon a passenger. Isaacs *v.* Third Ave. R. R. Co., *ante.* But this rule has been abrogated upon the theory of a contract between the carrier and passenger for safe carriage. Stewart *v.* Brooklyn and Crosstown R. R. Co., *ante.*

But it is not necessary to the liability of the company that the relation of carrier and passenger should exist. Day *v.* Brooklyn City R. R. Co., 12 Hun, 435. See also Rounds *v.* D. L. &. W. R. R. Co., *ante.* But it is, in such case, necessary to such liability that the act shall be done while the servant is engaged within the scope of his master's employment. Day *v.* Brooklyn City R. R. C., 12 Hun, 435. If the relation of carrier and passenger does exist, the liability of the company then depends on the contract for safe carriage and the willful act of the servant, by which the passenger is injured, will create the liability, whether done within or outside of his master's employment. Stewart *v.* Brooklyn & C. R. R. Co., *ante.*

A transfer ticket given by a railroad company to a passenger, for a continuous ride on another car, entitles him to ride on any of the company's cars, McMahon *v.* Third Ave. R. R. Co., 12 W. Dig. 275, where the ticket contains no notice of any reduction or limitation of the right which it purports to give; Id. Maroney *v.* Old Colony R. R. Co., 106 Mass. 153. And, if he enters another car and presents such ticket to the conductor, he cannot be lawfully put off the car, even without undue violence. McMahon *v.* Third Ave. R. R. Co., *ante.*

Where the holder of a ticket and coupons for one continuous passage over several lines of railroad agrees to used it on or before a certain specified day, and to forfeit the right to ride upon it in case of a failure to do so; the accepting of it by the conductor of the last line on the last day, though the trip was not completed till afterwards, is a compliance with the terms of the contract and prevents his lawful ejection from the car. Auerbach *v.* N. Y. C. & H. R. R. R. Co., 14 W. Dig. 469. Any removal by the servants of the company in

596 HAMEL *v.* BROOKLYN & N. Y. FERRY CO.

Note on the Liability of an Owner or Employer for Injuries. .

such case, on the ground that the ticket had ceased to be operative, before the termination of the journey, will render the company liable in damages. Id.

And where a passenger purchases such ticket, neither company is in a position to claim that he is bound to make a continuous passage over the whole route, or complain of his stoppages on the way before reaching the road. Auerbach *v.* N. Y. C. & H. R. R. R. Co., *ante.* But the passenger cannot enter one train, leave it and subsequently take another on the same road, if any objection is made to such a course. He is not obliged to begin at the commencement of either line; but when he has once begun at any point, he is bound to a continuous passage over the remainder of the road. Id.

While the regulation of a company, forbidding passengers from standing upon the platform of a car, is reasonable and proper, obedience to it cannot be compelled by physical force, unless there is some exigency which requires immediate action. Graville *v.* Manhattan R. Co., 20 W. Dig. 483. A refusal to comply will not justify the conductor in coercing a passenger to enter the car. The fact that there are vacant seats in the car does not change the nature of the act. Id.

A passenger is entitled to a restitution of money deposited by him, through mistake, in the box put in the car to receive the fare; and if the driver is not authorized to return the excess to him, he may receive the fare from another passenger, and thus reimburse himself for the money inadvertently placed in the box. Corbett *v.* Twenty-Third St. R. R. Co., *ante.* Where he has adopted this means of correcting such error, the driver has no right to remove him from the car, for so doing, or cause his arrest or detention. For such wrongful act of its servant, the company is liable. Id.

If, before a passenger is removed from the car, a companion tenders the fare for him, the conductor is bound to receive the money, Guy *v.* N. Y., Ont. & W. R. R. Co., 17 W. Dig. 521; O'Brien *v.* N. Y. C. & H. R. R. R. Co., 80 N. Y. 236, and cannot thereafter forcibly remove him from the train. Guy *v.* N. Y., Ont. & W. R. R. Co., *ante.* But this principle is limited to a case, where an oral controversy as to the payment of the fare arises at or before arrival at a regular station, and, while at such station, and before force has been applied to effect such expulsion, the passenger offers unqualifiedly to pay his fare, and tenders the money therefor. Pease *v.* D. L. & W. R. R. Co., 101 N. Y. 367, 372. The removal in such case is not a matter of negligence, but a wrongful act. Guy *v.* N. Y., Ont. & W. R. R. Co., *ante.*

But where a passenger, by an illegal refusal to pay fare, renders it the duty of the conductor to eject him from the car, and such refusal continues till after force has been required and applied to remove him,

he cannot then, by offering to pay fare, make the continuance of the process of expulsion unlawful, if done at a place where the train ordinarily stops and receives passengers. Pease *v.* D. L. & W. R. R. Co., *ante.*

A company is responsible for the act of a conductor in violently pushing or throwing a passenger off of the platform of a car, without asking him for his fare, or giving him opportunity to pay it. Shultz *v.* Third Ave. R. R. Co., 89 N. Y. 242; Jackson *v.* Second Ave. R. R. Co., *ante;* 7 Am. Rep. 448; Rounds *v.* D. L. & W. R. R. Co., *ante;* 21 Am. Rep. 597; Day *v.* Brooklyn City R. R. Co., 12 Hun, 435; aff'd in 76 N. Y. 593; Hoffman *v.* N. Y. C. & H. R. R. R. Co., *ante.*

A passenger who has mislaid his ticket, and is, in good faith, trying to find it, is entitled to a reasonable time for this purpose; and, if in case of failure to find it, after such reasonable opportunity, he is willing and ready to pay his fare, the conductor has no right to put him off the train. Hayes *v.* N. Y. C. & H. R. R. R. Co., 20 W. Dig. 237. And the question whether a reasonable time to find the ticket or pay the fare was allowed, is, upon the evidence, one of fact to be submitted to, and determined by, the jury. Id.

The question whether the act of the servant is done without malice or ill feeling toward the injured person, or was deemed by him necessary to effect the purpose with which he supposed himself charged in the proper performance of his duty, unless the evidence is clear and undisputed, is one of fact for the jury, and should not be disposed of, as a question of law, by the court. Jackson *v.* Second Ave. R. R. Co., *ante.*

The rule that it is always a question for the jury whether the act of a servant is done in pursuance of his employment, or wickedly and maliciously, is expressly limited to cases in which the wrongful act is not entirely inconsistent with the nature of the servant's employment. Meehan *v.* Morewood, *ante;* Hoffman *v.* N. Y. C. & H. R. R. R. Co., *ante.* But when it is clearly inconsistent, it is the duty of the court to dismiss the complaint. Meehan *v.* Morewood, *ante.*

So, the question whether the injury or death of the passenger is, under all circumstances, directly traceable to the removal, is for the jury. Guy *v.* N. Y., Ont. & W. R. R. Co., *ante.*

Where a lease from one railway company to another has been executed and delivered, and the lessee has taken possession of the leasehold property, and afterwards operates it as its sole proprietor, the lessor is not liable to a passenger thereon for injuries sustained by him by reason of the wrongful acts of the lessee's servants. Fisher *v.* Metropolitan El. R. Co., *ante.*

*Damages.*—A master is not liable in punitory damages for the act of his servant, unless, in case the action had been brought against the

servant, such damages would have been recoverable against him. Townsend *v.* N. Y. C. & H. R. R. R. Co., 56 N. Y. 295.

Nor is he chargeable with exemplary damages for the wrongful act of his servant, unless it appears, either that he authorized the commission of the wrong, or participated therein, or ratified it, or that he had notice of the bad habits of the servant, or that he left an inexperienced servant without control or supervision. Murphy *v.* Central Park, etc., R. R. Co., 48 Supr. 96; Caldwell *v.* New Jersey Steamboat Co., 47 N. Y. 282. The act must be reckless, of a criminal nature, and clearly established, in order to create such liability. Fisher *v.* Metropolitan E. R. Co., 34 Hun, 433; Townsend *v.* N. Y. C. &. H. R. R. R. Co., *ante;* Hamilton *v.* Third Ave. R. R. Co., 53 N. Y. 25.

*Theatre.*—A proprietor of a theatre, who employs a traveling theatrical troup to play for him for part of the gross proceeds, and authorizes one of the company to collect the tickets, and attend to those who should desire to exchange seat tickets, is responsible for the assault of such ticket collector upon one who had requested an exchange of tickets, and, on being ordered to get in line and take his turn, refused to comply. Fowler *v.* Holmes, City Ct. B'kl'n, Jan'y 28, 1889.