# CHARLESTON

DeBoard *v.* Camden Interstate Railway Company.

Submitted March 5, 1907.     Decided April 17, 1907.

1. Writ of Error—*Record—Authentication—Bill of Exceptions.*

   A paper, entitled "Bill of Exceptions", signed and sealed by the judge of the court, and bearing the style of the case in which an order has been entered, stating that a bill of exceptions was tendered, signed, sealed and made a part of the record, is sufficiently identified to make it a part of the record. (p. 43.)

2. Same—*Incorporation of Evidence.*

   A certificate of evidence, marked for identification in a particular manner, and referred to, as having been so marked, in a bill of exceptions, which says "the plaintiff to maintain the issue upon his part, introduced before the Court and jury the following witnesses, who testified as follows:   Here read evidence transcribed by stenographer, certified by her and for identification marked, (giving the mark found on the certificate), and this was all the evidence offered. either by the plaintiff or the defendant, upon the trial of this case," is sufficiently incorporated in the bill of execeptions, in a legal sense, and identified, to make it a part thereof. (p. 43.)

3. CARRIERS—PASSENGERS—*Contract—Evidence.*

A street railway ticket or transfer check, in the hands of a purchaser thereof for use on the car-lines of the company issuing it, constitutes the complete evidence of the contract between the purchaser and the company, and the privileges evidenced by its terms are not subject to limitation by a mere rule of the company, knowledge of which the purchaser did not have and could not conveniently have ascertained. (p. 46.)

4. SAME—*Ejection—Damages.*

Ejection of the holder of such ticket or transfer, by a conductor or other officer, from a car of the company by which it was issued, contrary to the terms thereof and refusal to carry him, on his failure and refusal to pay an additional fare, is actionable, and the measure of damages is such sum as the jury believe the plaintiff entitled to recover, provided the amount be not so large or small that the action of the jury in awarding it must be attributed to passion, partiality, corruption, prejudice, or some mistaken view of the case. (p. 47.)

5. WRIT OF ERROR—*Disposition of Cause—Remand to Trial Court.*

On reversing and setting aside an order, granting a new trial, on a writ of error perfected before the new trial was had, the appellate court will not render judgment on the verdict reinstated by its action on the writ of error, if the rendition of a final judgment in the court below, on a second verdict, obtained after the writ of error was perfected, be brought to its attention. Under such circumstances, the case will be remanded, for judgment by the court below, on the verdict re-instated by the appellate court, to the end that there may not be in force two judgments at the same time on one cause of action. (p. 49.)

6. SAME—*Effect of Transfer of Cause—Jurisdiction of Appellate Court—Subsequent Proceedings in Trial Court.*

The acquisition of a second verdict and judgment thereon, under such circumstances, does not deprive the appellate court of its jurisdiction nor constitute a settlement and adjustment of the controversy, barring prosecution of the writ of error. (p. 50.)

Error to Circuit Court, Cabell County.

Action by William J. DeBoard against the Camden Interstate Railway Company. From an order granting a new trial after verdict in favor of plaintiff, he brings error.

*Reversed. Remanded.*

ISBELL & PERRY, for plaintiff in error.

VINSON & THOMPSON, for defendant in error.

Poffenbarger, Judge:

In an action of trespass on the case for damages, for wrongfully refusing to carry him on its street car, and ejecting him therefrom, William J. DeBoard obtained, in the circuit court of Cabell county, a verdict against the Camden Interstate Railway Company, for the sum of $300.00, which the court, on the motion of the defendant, set aside. Under clause 9 of section 1 of chapter 135 of the Code of 1899, section 4038, Code of 1906, allowing, in any civil case, where there is an order granting a new trial, an appeal from such order, DeBoard obtained a writ of error.

As the verdict was set aside under the impression that the evidence did not sustain it, or that it was contrary to the evidence, the assignment of error involved a consideration of the evidence, and the point is made, in the brief filed for the defendant in error, that the evidence has not been made part of the record. The order, purporting to make the bill of exceptions part of the record, is the final order in which the verdict is set aside, and a new trial allowed. The portion thereof which relates to the bill of exceptions reads as follows: " Be it remembered that upon the trial of this case, after the jury was sworn and before they had retired, and during the progress of the trial, the plaintiff objected and excepted to certain rulings, opinions and actions of the Court, made during the trial, and tendered his bill of exceptions thereto marked 'Exceptions, *DeBoard* v. *Camden Interstate Railway Company* certificate of evidence,' and prayed that the same be signed, sealed and made a part of the record therein, which is accordingly done."

What purports to be a bill of exceptions is printed in the record under the following heading:

"Bill of exceptions. *William J. DeBoard* v. *Camden Interstate Railway Company,* a corporation. *Trespass on the case.*" It is what is known as a skeleton bill of exceptions and so much of it as relates to the evidence, reads as follows: "The plaintiff to maintain the issue upon his part, introduced before the Court and jury the following witnesses, who testified as follows: Here read evidence transcribed by stenographer, certified by her, and for identification marked '*DeBoard* v. *Railway Company*—Certificate of evidence.

And this was all the evidence offered, either by the plaintiff or the defendant, upon the trial of this case." Following the bill of exceptions appears what purports to be the evidence in the case under the caption, *DeBoard* v. *Railway Company*, certificate of evidence." Immediately after this caption appears the style of the case in the following terms: " *William J. DeBoard* v. *Camden Interstate Railway Company. On Appeal.*" The order purporting to make a bill of exceptions part of the record was entered on the 9th day of February, 1906. The certificate of the stenographer to the evidence bears date February 14, 1906.

It is insisted that the bill of exceptions does not answer the descriptive terms of the order. It bears the style of the case and is signed and sealed by the judge of the court. Many decisions of this Court require in the order a description sufficient to identify the paper referred to. Different methods of accomplishing this, in common use by members of the profession and the courts, such as marking the bill by a number, a letter, or a name, have been mentioned and approved, no particular mode of identification has ever been required. It suffices that a comparison of the bill of exceptions with the description given in the order, makes its identity certain. What degree of certainty is required, has never been very clearly defined; but it is difficult to see any reason for mere technical requirements. If there be mere trifling inaccuracies, such as reason demands must be due to nothing more than inadvertence, while the paper, in all material and substantial particulars, comes within the terms used so fully as to convince and satisfy any reasonable person that it is the paper referred to, the ends of justice would not be subserved by the rejection thereof. *McKendree* v. *Shelton*, 51 W. Va. 516, sustains this view. In determining what is deemed to be a part of a bill of exceptions, this Court said: " It must be annexed to it, or so marked by letter, number or other means of identification mentioned in the bill as to leave no doubt, when found in the record, that it is the one referred to in the bill of exceptions." The later cases of *Tracy* v. *Coal Co.*, 57 W. Va, 587, *Dudley* v. *Barrett*, 58 W. Va. 235, *Parr* v. *Currence*, 58 W. Va. 523, *Railway Co.* v. *Joyce*, 58 W. Va. 544, and *Woods* v. *King*, 59 W. Va. 418, have not qualified this rule in any respect. We think

the bill of exceptions is sufficiently identified to be a part of the record.

It becomes necessary now to determine whether the certificate of evidence is a part of the bill of exceptions. The bill of exceptions says "The plaintiff to maintain the issue upon his part introduced before the Court and jury the following witnesses, who testified as follows," and then directs the insertion of the evidence as transcribed by the stenographer, certified by her and for identification marked "DeBoard v. Railway Company, certificate of evidence." Turning to what is relied upon as the certificate of evidence, we find the caption thereof to correspond exactly with the means of identification set forth in the bill of exceptions. Nevertheless, it is said that the bill does not show that the evidence is annexed to it and made a part thereof. The phraseology, employed in a bill of exceptions, in an attempt to make another paper a part of it, is immaterial, if the terms used logically do so. To require the bill to say, in so many words, the evidence hereto annexed or bearing certain marks, is made a part hereof, would sacrifice substance to mere form; for that language would not be more certain or effective, than the language employed in the bill under consideration, which says the witnesses introduced testified as follows, and then directs the insertion of the testimony, embodied in a paper, so marked and described as to leave no room for any mistake concerning it. When certain words, employed for the purpose of identification, are apt and well calculated to achieve that purpose, indicating the very nature of the thing which it is proposed to incorporate by means thereof, as well as identifying it, there is no presumption that there are other things bearing the same descriptive marks. On the contrary, all the decisions in which this method of identification has been approved and recommended, deny such presumption. The evidence rejected in McKendree v. Shelton, for want of means of identification, bore no mark of identification. The commissioner's report, which was made a part of the bill of exceptions, did not even refer to the depositions and the depositions were not themselves signed by the witnesses. Judge Brannon, delivering the opinion of the Court, said he had no doubt that the commissioner's report and the exception and

the affidavits mentioned in the bill of exceptions could be treated as parts of it; but he said there was a great volume of unsigned depositions not certified by the commissioner as having been taken by him nor referred to by him in his report. There was a reference to them in the bill of exceptions, but the bill contained nothing by which they could be identified. The views expressed in that case form the basis of all that has been said in subsequent cases, concerning the requirement, in a bill of exceptions, of language purporting to make other papers part of it, and the specifiation in it of means of their identification. That the transcript of evidence referred to in the bill of exceptions is both identified by the bill of exceptions and legally, though not actually, incorporated in it, is clear beyond the shadow of a doubt. That the certificate thereto bears a later date than that of the order by which the bill of exceptions was made part of the record cannot prevail over the solemn order of the court, declaring the paper to have been made part of the record. It must be attributed to clerical inaccuracy or inadvertence, for it cannot overthrow the solemn order of the court, saying it was made part of the record on the 9th day of February, 1906.

The railway company operated street car lines on Third Avenue and Fourth Avenue of the city of Huntington. What connection these two lines had is not clearly shown, but transfers were given by the conductors on the Third Avenue line which were good for passage on the Fourth Avenue lines if presented within one hour from the time of their issuance, shown by punch marks in the margin thereof. The plaintiff, an employe in the American Car and Foundry shops, situated in the eastern end of the city, took passage on a Third Avenue car, going west, paid his fare and took a transfer from the conductor. Having crossed over to Fourth Avenue and waited a few minutes, he observed a car standing below Ninth street and started down to it. Before he arrived, the car moved on and he walked on after it until another car came down, which he boarded and handed the conductor the transfer. He was informed by the conductor that the transfer was not good for a passage on the car, although presented within an hour after the time at which it had been issued, because it was tendered below a place

known as Johnson's Lane.  He refused to pay any additional fare and was ejected from the car.  He resisted removal and the conductor rang for the motorman who came back with a crank in his hand with which he struck the plaintiff across the knuckles to make him let loose of the bar to which he was clinging.

So much of the transfer as is material reads as follows:

" FREE TRANSFER

· " Good only as indicated, if presented within one hour from time and date punched in margin—not transferable—and is accepted by passenger upon condition that the Company is not responsible for any error upon the part of the conductors in punching time and dates.

"Camden Interstate Railway Co.
" Examine your Transfer Carefully.
"Issued by conductor No. 71.
"Going West on Fourth Avenue
"From 6th and 8th Avenue
"From 3rd Avenue.

|         A. M.                    |         P. M.                 |
| -------------------------------- | ----------------------------- |
| 1 2 3 4 5 6 7 8 9 10 11 12       | 1 2 3 4 5 7 6 8 9 10 11 12     |
| 15                          15   | 30                        15  |
| 30                          30   | 30                        30 · |
| 45                          45   | 45                        45"  |

It does not disclose any such limitation as to the place at which it must be used as was enforced· by the conductor. It appears from the testimony of a witness for the defendant that there was a rule, forbidding its acceptance below Johnson's Lane, posted, among others, in the defendant company's barn, to which the public were not admitted.

The plain and undisputed state of facts, shown by the evidence, renders it unnecessary to consider many of the principles of law applicable to the rights of passengers and common carriers, respectively, growing out of contracts for carriage.  On the face of the transfer but one limitation appeared, namely, that it should be used within one hour after the issuance thereof.  If presented within that time, on the face thereof, it entitled the holder to a westward passage on any car of the company running on Fourth Avenue.  There is no evidence tending in the slightest degree

to show that the plaintiff had any knowledge of any limitation upon that right. According to all the authorities, a paper so handed him, without any explanation, or any knowledge on his part of limitation, constituted the contract between him and the company. Unlike steam railroads, street railways do not have a certain fare for passage between given points. The nature of their business is such as to compel them, for the most part, to charge a certain fare for a passage without reference to the distance. This, at least, was the method of the defendant company. The paper, on its face, therefore, entitled the plaintiff to carriage, and knowledge of a secret limitation embodied in some rule which he had never seen, could not be imputed to him. That rule, therefore, constituted no part of the contract. "Railway passengers are not required to know the rules and regulations made by the directors of a company for the control of the actions of its agents and the management of its affairs." *Hufford* v. *Railroad Co.*, 64 Mich. 631, 8 Am. St. Rep. 859. In that case, this principle was applied in favor of a passenger who had relied upon the representations of an agent as to the extent to which a ticket purchased by him was good for passage. It seems that the ticket on its face was a little uncertain. It was not controverted that the purchaser had read the ticket. Being uncertain as to what its language meant, he applied to the agent for an explanation and was informed that it was good for passage to the point to which the purchaser desired to go, and to which he had paid the fare. The conductor refused to carry him to that point and required him to pay an additional fare for a portion of the distance. To the same effect see *Murdock* v. *Railroad Co.*, 137 Mass. 293, 50 Am. Rep. 307. *Maroney* v. *Railway Co.*. 106 Mass. 153, 8 Am. Rep. 305, is directly in point, holding as follows: "A regulation by a railway company, restricting the holder of a certain class of tickets to special trains, nothing of the kind appearing on the tickets, will not justify the expulsion of the holder of such ticket from the regular trains, he having taken passage thereon without knowledge of the regulation." These decisions and views are fully sustained by the general principles stated in 28 Am. & Eng. Ency. Law 174. The authorities agree that the purchaser of a ticket, or a con-

tractor for carriage, in order to be bound by a limitation, must have knowledge of it, but there is a disagreement among them as to what amounts to notice, and as to the extent of the duty of a person contracting for carriage to carefully examine all of the stipulations written or printed in the contract.

No ground is perceived upon which the court could have set aside the verdict, other than the erroneous impression that the verdict was excessive. *Trice* v. *Chesapeake & Ohio Ry. Co.*, 40 W. Va. 271, propounds the following rule governing the quantum of damages in such case, which, as applied in that case, would sustain the verdict in this: "Where the case is one of indeterminate damages and the law gives no specific rule of compensation, the decision of the jury upon the amount of damages is generally conclusive, unless the amount is so large or small as to induce the belief that the jury was influenced by passion, partiality, corruption, or prejudice, or misled by some mistaken view of the case; but if so excessive as to induce such belief, it will be set aside." The railway conductor who ejected the passenger in that case did not act maliciously, nor had the plaintiff suffered any serious damage. He was ejected from the train because the mileage book, tendered in payment of his fare, bore on its face evidence of having been altered. It had been stamped as a book for a previous year and the date was afterwards changed with a pen. The agent who sold it had put the wrong date on it and then attempted to correct it. Unaware of this mistake and suspecting fraud, the conductor refused to accept it, and put the passenger off, without any violence or ill treatment, at a regular station, where he suffered nothing from inclemency of the weather and was delayed only a short time. A verdict of $550.00 was sustained by this Court, under the rule above stated.

A copy of an order of the court below, showing that a new trial has been had, since the writ of error was granted, in which the plaintiff obtained a judgment for $50.00, is presented, with the brief, to sustain the contention, that the matter in controversy has been settled and ended, by arrangement of the parties outside of this Court. The plaintiff resisted the new verdict, by a motion to set it aside,

which the court overruled. The copy of the order, there-fore, fails to show any settlement of the matter in contro-versy. The judgment has not been appealed from, but if it had been taken before the awarding of the writ of error, the plaintiff would not be bound to accept it, nor would it preclude him from insisting upon the error committed in the setting aside of the former verdict. In *Gwynn* v. *Schwartz*, 32 W. Va. 487, a verdict was set aside and the new trial awarded had been had, resulting in a verdict, contrary to the one obtained on the first trial, and the case was then brought to this Court on a writ of error to the final judg-ment, as well as to the order setting aside the first ver-dict; and this Court perceiving error in the action of the court below, in setting aside the first verdict, reversed both judgments and rendered a judgment on the first ver-dict. The same action occurred in *Davis* v. *Telephone Co.*, 53 W. Va. 616. For the position that the plaintiff was not bound to wait for a final judgment, in taking his writ of error, the statute referred to in the statement of the case is express and indisputable authority.

While the judgment is not before this Court for review, and, therefore, cannot be vacated or reversed here, it dis-closes to us, that the reversal of the order, setting aside the first verdict, will when the mandate of this Court goes down, establish in the court below error in said judgment, if not, indeed, want of jurisdiction in that court to try the case and render judgment, at the time at which it did so. Seeing this, in order to avoid the anomaly and injury of two judgments for the same cause of action, we should reverse the order complained of, thereby re-instating the verdict, set aside by it, and remand the case to the circuit court for the rendition of judgment thereon. Then, under its power of restitution and correction of its own errors, it may be able to vacate the judgment, set aside the second verdict and render judgment on the first. Though the record upon which a judgment or decree, brought into this Court on a writ of error or appeal, cannot be amended or altered as to matter upon which it is based, and original jurisdiction can-not be conferred upon this Court, as to matters not acted upon in the court below, by amendments made here, this Court may be governed in its action by subsequent proceed-

ings of the court below, brought to its attention. If, pending an appeal, the parties by consent and agreement cause such further proceedings to be had in the court below as to dispose of the whole subject of controversy, this Court is thereby deprived of its jurisdiction and will dismiss the appeal. *Baker* v. *Gappan*, 56 W. Va. 349. As we can ascertain, from subsequent orders of the lower court, conduct of the parties which deprives this Court of its jurisdiction, it seems to follow that we can consider such an order so far as to sustain our refusal, to a party who has taken one judgment in the court below, of a second judgment for the same cause of action.

The order complained of will, therefore, be reversed and set aside, and the case remanded for the rendition of judgment on the verdict, found on the 24th day of January, 1906.

*Reversed.   Remanded.*